OPINION OF THE COURT
Sheldon S. Levy, J.
Can police officers seize, without a warrant, the clothing of a hospital patient who is a suspect in a homicide investigation? The question has not been addressed previously in this State.
Defendant Michael Watt was indicted for murder in the second degree. The charge is that he intentionally caused the death of one Charles Mayo by stabbing him 12 times with a knife at the Grand Union, a transient hotel in Harlem.
The pertinent facts are simply stated. On April 26,1982, at about 12:30 p.m., Detective Julia Lugo learned of the subject knifing death which had taken place about six hours earlier. She also heard from a known street person with personal knowledge that the perpetrator had been wounded and had gone to the North General Hospital (formerly the Hospital for Joint Diseases), located about a block from the hotel. At 2:00 p.m., Detective Thomas McCabe accompanied Detective Lugo to the hospital and discovered that defendant was the only person with a stab wound who had been admitted that day. Defendant had collapsed outside the hospital at about 10:30 a.m. and had been brought inside by hospital employees.
*931 Upon inquiry, McCabe ascertained that defendant was undergoing surgery and that his clothes were being held in the emergency room in a green plastic bag. At McCabe’s direction, a nurse brought the bag to him. McCabe opened the bag and saw that the items of clothing were bloodstained. He showed the clothes to Lugo, who asked the nurse if she could have them. The nurse gave the detectives the apparel, and they signed a receipt. The next day, defendant was arrested.
Defendant now moves pretrial to suppress the bloody clothing. He argues, inter alia, that he never lost the expectation of privacy that he always maintained in his own clothes; that hospital personnel acted inappropriately in releasing the garments to law enforcement officials without a properly secured search warrant; and that there were no exigent circumstances justifying such police conduct.
The People, on the other hand, contend that defendant, as a patient in a hospital, had no reasonable anticipation of privacy in his clothes, and especially at the point they were seized; and that, because there was a possibility that the evidence would soon be destroyed, the detectives had no time to get a warrant.
The burden is definitively on the prosecution to prove the reasonableness of warrantless police action (People v Knapp, 52 NY2d 689, 694; People v Whitehurst, 25 NY2d 389, 391). Of course, all searches and seizures conducted without a warrant are per se unreasonable, with but a few well-established exceptions (People v Adams, 53 NY2d 1, 7). The two exceptions to be considered here are searches permitted pursuant to consent, and searches undertaken in exigent circumstances. Nevertheless, the warrant requirement and its exceptions do not come into play unless there is . a search and seizure within the meaning of the Fourth Amendment in the first instance.
The People argue that there was no Fourth Amendment search in this case because the defendant, in removing his garments so that an operation could be performed, abandoned his clothes and relinquished all expectation of privacy in them. This contention — that admission to a *932 hospital, in effect, triggers a loss of constitutional protections — must be flatly rejected. There is a strong presumption against the waiver of such basic rights, even under life-threatening conditions. An abandonment will be found, therefore, only when the People’s proofs “ ‘reasonably beget the exclusive inference of [a] throwing away’ ” (People v Howard, 50 NY2d 583, 593).
Here, there is no evidence that defendant determined permanently to discard his clothes — even in their visibly soiled condition. Detective McCabe, in fact, admitted that nothing had led him to believe that defendant had thrown away or given up his ownership of the subject clothing. Indeed, the placing of the garments in the green plastic bag by hospital employees evinced an objective belief on their part that the items were still the personal property of defendant and that, when he felt better, they would be returned to him. Clearly, then, there was a Fourth Amendment search and seizure when the officers intruded upon defendant’s desired and deserved privacy and upon his reasonable expectations thereof.
Nor did the hospital’s action in taking charge of defendant’s clothing elevate it to a position of joint ownership or otherwise give it standing to consent to a search (People v Cosme, 48 NY2d 286). Rather, whether express or implied, the hospital became the bailee of the clothes for defendant in a bailment for mutual benefit or for hire. As a bailee, the hospital, and, of course, its employees, was required to exercise ordinary and reasonable care for defendant’s clothes and had no authority to allow them to be taken without a warrant. “When property in the custody of a bailee for hire [or for mutual benefit] is demanded by third persons, under color of process, it becomes [the bailee’s] duty to ascertain whether the process is such as requires him to surrender the property, and if it is not, then it is his right and duty to refuse” (Roberts v Stuyvesant Safe Deposit Co., 123 NY 57, 65-66). Defendant had every right to rely on these long-established bailment principles, and he cannot be deemed to have assumed the risk that hospital employees would act in dereliction of their duty and surrender his property without even making basic inquiry of the detectives.
*933 Moreover, this is not a case where the investigating officers relied in good faith on the apparent capability of an individual to authorize a search or where the circumstances reasonably indicated that the individual did have the power to so consent (People v Adams, 53 NY2d 1, 9, supra). Surely, the detectives did not need to be versed in the details of bailment law to doubt the nurse’s right to turn over clothing that was not hers. Given the indicated situation, the police should not have employed their official status to effect a seizure without first having made efforts to ascertain whether the hospital employee actually possessed the authority to relinquish the items. Their decision to forfeit that inquiry and to rely instead merely upon her apparent authority was unnecessary and unreasonable (see People v Litwin, 44 AD2d 492). Accordingly, their warrantless confiscation cannot be upheld under the consent exception.
As to the exigent circumstances exemption from the warrant requirement, that too is unavailing here. To come within that exception, the People must demonstrate both probable cause to search and seize and the existence of urgent events which make it impossible to obtain a warrant in sufficient time to preserve evidence or contraband that is threatened with removal, concealment or destruction (People v Knapp, 52 NY2d 689, 696, supra). Although the prosecution has made a sufficient showing of probable cause to search, it has failed to present any facts reasonably calculated to establish that the visibly bloody clothes were about to become unavailable. No hospital employee was called to testify that any items of apparel would have been destroyed or washed that day or at any time in the future. Neither detective testified even to a belief that any such procedure would occur. Furthermore, since, as the police officers knew, defendant was undergoing emergency surgery, it was highly unlikely that he would have had any immediate need for or access to his clothes.
In actuality then, the facts adduced do not begin to approach exigent circumstances. The police could readily have requested the nurse or her supervisor not to destroy, remove, wash or otherwise alter defendant’s clothing until they returned with a warrant. Or, if it was felt that such an *934 arrangement would not afford adequate security for the garments, then one of the detectives could have stayed at the hospital to safeguard the clothes while the other sought to obtain a warrant. (At present, a search warrant may also be secured by oral or telephonic communication with the court [see CPL 690.36 (L 1982, ch 679, § 2, eff Sept. 20, 1982)].)
While it may have been simpler and easier for the police to act as they did, rather than to follow these alternative procedures, neither the seriousness of the charge, the degree of probable cause, the convenience of police personnel nor a “rush of judgment” philosophy can be employed as a substitute for a legally sufficient demonstration of constitutional exigency (People v Knapp, supra, p 697) or as a sanction for improper police action. A hospital emergency is not necessarily a police emergency, and neither emergency provides an automatic basis for a loss of all constitutional rights. Plainly, in this instance, no urgent circumstances justified the detectives’ warrantless search. Any evidence secured thereby must be excluded.
Accordingly, defendant’s motion to suppress his bloodstained clothing, seized in the hospital without a warrant, without consent and without exigent circumstances, is granted.