*430 OPINION OF THE COURT
Rena K. Uviller, J.
When the police arrest a hospital patient, may they seize and search the personal effects he relinquished to the hospital for safekeeping in order to receive emergency treatment? Or does the patient retain an interest in his property sufficient to require the police to obtain a warrant before taking it? The question posed by this case is a recurring and unresolved one as perpetrators as well as victims seek hospital care in the aftermath of the City’s violence. (See, e.g., People v Watt, 118 Misc 2d 930; People v Miller, 19 Ill App 3d 103, 311 NE2d 179; State v Smith, 88 Wash 2d 127, 559 P2d 970; Commonwealth v Silo, 480 Pa 15, 389 A2d 62.)
facts. Armed with probable cause based upon an accomplice’s confession implicating defendant Hayes in the murder of a drug dealer, detectives went to arrest him at a New Jersey hospital; Hayes had gone there for treatment for injuries incurred during his flight from the crime. After advising him he was under arrest and posting an officer in his room, a detective located the clothing defendant had been wearing when he checked into the hospital; it was being held for him at the reception desk and was about to be stored with other patients’ belongings. Although the detective had no specific belief that the clothing had any evidentiary value, he wished to secure it for further investigation. He signed a release form and the attendant gave him a bag containing the clothing which was later opened and its contents inventoried. Several weeks later, bloodstains on the clothing were tested and compared with that of the deceased. It is the results of that testing as well as the clothes themselves which Hayes seeks to suppress at his trial.
discussion. Until fairly recently Fourth Amendment violations were analyzed as a single event: Was the accused subjected to an unreasonable search and seizure? (See, e.g., Chambers v Maroney, 399 US 42.) In the past decade, however, both the Supreme Court and the New York Court of Appeals have come to view the Fourth Amendment (and its State analogue, NY Const, art I, § 12) as a bulwark against two separate events: unreasonable searches which implicate privacy rights and unreasonable seizures which affect property interests. (Segura v United States, 468 US 796; People v Natal, 75 NY2d 379.)
The distinction is evident in this case. Defendant Hayes’ *431 property interest in his clothing was affected when the detective took it from the hospital, thereby depriving him of its use, enjoyment and control. His privacy interests were invaded in two stages: initially, when the police searched the clothing by subjecting it to visual inspection and again, when the search was expanded to a scientific analysis of the stains on the clothing.
As for defendant’s privacy claim, a Fourth Amendment search has occurred if Hayes had a reasonable expectation of privacy in either the area searched or in the materials seized, that is, in either the place of or object of the search. (People v Reynolds, 71 NY2d 552; People v Rodriguez, 69 NY2d 159; People v Ponder, 54 NY2d 160; Katz v United States, 389 US 347.) Clearly, Hayes had no reasonable expectation of privacy in the place searched, that is, the hospital. His rightful concern is with his clothing. Yet he abandoned any privacy interest he had in their outward appearance by displaying them to the public at large when he wore them into the hospital and gave them to the attendant in order to be treated. By subjecting the clothing to a visual inspection the police merely gazed upon what the world had already seen. In the familiar language of Katz v United States (supra, at 351), "[w]hat a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection”. (United States v Crews, 445 US 463 [physical appearance]; United States v Mara, 410 US 19 [handwriting]; United States v Dionisio, 410 US 1 [voice]; see also, California v Greenwood, 486 US 35 [discarded trash]; People v Reynolds, 71 NY2d 552, supra [open fields viewed by air]; cf., Cupp v Murphy, 412 US 291; Matter of Caruso v Ward, 72 NY2d 432 [blood and urine].)
If the proffered evidence were solely a description of the clothing’s outward appearance, Hayes would have no Fourth Amendment grievance. The People, however, seek to introduce the results of the blood analysis of stains found on the clothes, as well as the clothes themselves. Even though defendant relinquished his privacy interest in their outward appearance, did he retain a privacy interest in that which could not be seen by the naked eye? And did he also retain a property interest which required the police to obtain a warrant before removing the clothing from the hospital and subjecting it to the more penetrating search by scientific analysis?
In People v Natal (75 NY2d 379, supra), the defendant moved to suppress a bandanna, a bag and a letter opener he had with him at the time of his arrest and which were being *432 held by the police for safekeeping during his pretrial confinement. Some months later, and while defendant was still in custody, the police gave the itéms to the District Attorney when it was learned that they were relevant to defendant’s identification at trial; no warrant authorized them to do so. The Court of Appeals observed that the defendant retained a property interest in his effects in that he was ultimately entitled to their return if they had not been seized as evidence at the time of his arrest. "But the existence of a property interest”, the Court reasoned, "does not mean that defendant also had a privacy interest protectable by the State and Federal guarantees against unreasonable searches and seizures (People v Reynolds, 71 NY2d 552, 557; United States v Chadwick, 433 US 1, 7)” (People v Natal, supra, at 383; see also, Segura v United States, 468 US 796, supra). The Court of Appeals held that a visual inspection of defendant’s personal belongings previously exposed to public view did not invade any substantial privacy interest. It observed, however, that the items were admissible at trial for their outward appearance only and were "not sought for further searching or experimentation.” (People v Natal, 75 NY2d 379, 384, supra.)
Here, the evidentiary value of the clothing is not only in its outward appearance. Rather, it is the results of a search by scientific testing — an analysis of blood on the clothing — which the People also seek to introduce. As to this hidden aspect of the clothing, characteristics not revealed to the public at large, Hayes never forfeited his privacy claim. He retained a privacy interest to those hidden properties just as he did, for example, to the contents of his pockets or the contents of a briefcase he may have had with him upon entering the hospital. Accordingly, for its yield, i.e., the test results, to be admissible at trial the search as well as the seizure must fall within one of the exceptions to the warrant requirement.
The search by scientific testing, as well as the seizure of the clothing which allowed for that testing, were not incident to defendant’s arrest. (Stoner v California, 376 US 483.) The arrest, for which probable cause was provided by an accomplice’s confession, occurred when the police posted a guard in Hayes’ hospital room. His clothing was seized later, on another floor, from a hospital attendant. The seizure was not contemporaneous with arrest, either spatially or temporally. Accordingly, the rationale for a warrantless seizure and search incident to arrest — to prevent the use of an available *433 weapon or the destruction of evidence — is unavailing in this case. (See, Chimel v California, 395 US 752, 763.)
In those cases sustaining seizures and/or searches of property which were not contemporaneous with arrest, the subject had the property in his possession when he was first taken into custody. That is, even though the subject was not relieved of his belongings upon his arrest, they were in his possession at that time. (United States v Edwards, 415 US 800 [warrant-less seizure and subsequent testing of clothing 10 hours after arrest after substitute clothing had been provided]; People v Natal, 75 NY2d 379, supra; People v Perel, 34 NY2d 462.) Or the property, although not seized from the subject as either evidence or as contraband initially, was being held for safekeeping by the police during his postarrest detention. (People v Natal, supra; People v Perel, supra.) In such situations the Supreme Court and the New York Court of Appeals, respectively, reasoned that since the police could have seized and searched the items at the time of arrest, the passage of time did not mitigate their authority.
The seizure and scientific testing of defendant’s clothing cannot, moreover, be justified as an "exigent circumstance” exception to the warrant requirement. (Schmerber v California, 384 US 757; Cupp v Murphy, 412 US 291, supra; People v Knapp, 52 NY2d 689.) This record contains no evidence that Hayes’ clothing was about to be removed from the hospital, laundered, or damaged in any way that would have destroyed its evidentiary value. And if there had been such danger, the detective could have requested that the attendant not remove or alter the clothing until a warrant was obtained. (See, Segura v United States, 468 US 796, supra.) Nor can the seizure and search by testing be constitutionally justified by the hospital’s consent. There is no evidence that the hospital was other than a bailee without claim or right to the property and with no authority to release it or to test it without the owner’s consent. (Stoner v California, 376 US 483, supra; United States v Matlock, 415 US 164.) Hayes relinquished his clothes to the hospital for a limited and specific time and purpose, fully expecting to recover them after his treatment.
The foregoing analysis compels the conclusion that the clothing as well as the test results are inadmissible. Hayes’ property rights to his belongings were violated when they were removed from the hospital without a warrant. His privacy interests were infringed by the blood analysis performed on the clothes. The seizure and consequent scientific search *434 were not incident to his arrest; they were without his consent and there were no exigent circumstances. Moreover, since Hayes was not wearing the clothing when he was arrested, the police were not merely retrieving something to which they were already entitled when they took it from the hospital attendant. (Cf., United States v Edwards, 415 US 800, supra; People v Natal, 75 NY2d 379, supra; People v Perel, 34 NY2d 462, supra.)* Finally, since the clothing was already being safeguarded by the hospital, there was no need for the police to take it for that purpose.
Even though the items themselves and the test results are inadmissible, the People are nonetheless permitted to introduce testimony at trial regarding the clothing’s outward appearance. To that aspect of it Hayes, as already noted, abandoned any privacy claim. The result (i.e., permitting testimony but not the clothing itself) is anomalous since in the more typical search and seizure case if an item is unlawfully seized neither it nor a description of it is admissible at trial. That is because the subject’s privacy and property interests usually coincide. For example, when an object is recovered from a subject’s pocket after an unlawful arrest, neither the object nor a description of it will be admissible; the police had neither the right to seize it nor to subject it to a visual examination. In a case such as this one, however, where property and privacy rights are discretely affected, the remedy must be tailored accordingly.

 The result might be different in a case where the police take an arrestee to the hospital for treatment and are unaware at the time that his clothing has evidentiary value. In such a case they might well have the authority subsequently to retrieve the clothes from the hospital since they were entitled to take it initially, when they arrested him.