■ LeLand D. Higgins, Appellant, v City of Oneonta et al., Respondents. [617 NYS2d 566] —White, J. Appeal from an

order of the Supreme Court (Ingraham, J.), entered September 10, 1993 in Otsego County, which granted defendants' motion for summary judgment dismissing the complaint.

Plaintiff was dismissed, following a disciplinary hearing, from the City of Oneonta Police Department in 1977. In 1982 he began treating with a psychiatrist, Stephen Andreski, for chronic depression and feelings of hostility toward members of the Police Department and other City officials whom he believed were responsible for his dismissal from the police force. Because plaintiff made verbal threats against these individuals, Andreski and plaintiff's former attorney wrote a letter to the District Attorney of Otsego County advising him of these threats. This letter was eventually forwarded to the Police Department.

In a phone conversation on April 25, 1985, plaintiff informed Andreski that he had injured his foot and was feeling bad. Concerned that plaintiff might be depressed and suicidal, Andreski discussed with him the possibility of voluntary hospitalization for his depression. On April 26, 1985, plaintiff informed Andreski's office manager that he was more depressed and would call Andreski at 2:00 P.M. When he did not, Andreski called the Police Department, reaching Police Chief John Donadio.

Andreski advised Donadio that plaintiff "has been more depressed and earlier today he said that he really felt a lot more like killing the people that were responsible". Donadio then informed Andreski that on April 25 and 26, 1985, plaintiff had made six calls to the Police Department stating that he wanted to send retirement presents to the City's Mayor and the City Attorney. At that point Andreski advised Donadio to pick plaintiff up because, in his assessment, there was a reasonable belief that plaintiff might be dangerous to other people. When the police arrived at plaintiff's house, they learned that he was inside sleeping. Donadio called Andreski, advising him of the situation and asking if the police could enter the house. Andreski replied that they could. The police then entered plaintiff's house without a warrant, took him into custody and eventually transported him to a psychiatric center. On May 3, 1985, at his request, plaintiff was transferred to a hospital for continued treatment.

Subsequently, plaintiff commenced this action asserting causes of action in negligence, false arrest/imprisonment, assault/excessive force and a violation of his civil rights. Following completion of discovery, defendants moved for sum-

mary judgment dismissing the complaint on the grounds of privilege and qualified immunity. Supreme Court granted the motion, prompting this appeal by plaintiff.

Plaintiff's negligence cause of action was properly dismissed since a party seeking damages for an injury resulting from a wrongful arrest and detention is relegated to the traditional remedies of false arrest and imprisonment *(see, Secard v Department of Social Servs.,* 204 AD2d 425; *Russo v Village of Port Chester,* 198 AD2d 408).

Defendants contend that plaintiff's cause of action for false arrest/imprisonment lacks merit because their confinement of him was privileged. This claim is predicated upon Mental Hygiene Law former § 9.41 (as amended by L 1980, ch 843), which provided in pertinent part "[a]ny * * * police officer * * * may take into custody any person who appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others". Under the statute, the likelihood of serious harm arises when there is "a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm" (Mental Hygiene Law [former § 9.41 (2)]). Contrary to plaintiff's assertion, detention pursuant to this statute does not require proof that the person presents an immediate danger to others *(see, Thomas v Culberg,* 741 F Supp 77, 81, n 1; *Project Release v Prevost,* 551 F Supp 1298, 1305, *affd* 722 F2d 960).

Defendants posit their claim of privilege upon Andreski's opinion that plaintiff was dangerous and the content of the calls plaintiff made to the police station on April 25 and April 26, 1985. In these calls plaintiff stated, "I'm gonna give both of those individuals a retirement present that they're gonna remember for a long time"; "I don't know if they'll appreciate it or not but I'm gonna give' em one"; "I'm gonna give you a present and I'll guarantee one thing you won't forget it"; "If I told you what I had in mind * * * in twenty minutes a police car would be down here" and "what I have in mind for ya [is] not very pleasant".

Plaintiff does not deny making these statements. Instead, he argues that defendants should not have construed them as threats but rather as the ramblings of a man promising to embarrass public officials by giving them a mock gift at their formal retirement. We reject this argument for it is merely a post hoc rationalization lacking any evidentiary support. Likewise, Andreski's affidavit disavowing his previous assessment that plaintiff was dangerous lacks probative value as it is

predicated upon the fallacious claim that the police intentionally misled him regarding the contents of plaintiff's calls. Notably, Andreski does concede that plaintiff's statements "might be interpreted to be threatening or harassing".

Given defendants' knowledge of plaintiff's longstanding hostility toward certain members of the Police Department and City officials, coupled with Andreski's opinion that plaintiff was dangerous and the obvious threatening nature of plaintiff's phone calls, there is sufficient evidence to find as a matter of law that defendants are entitled to the privilege afforded them by Mental Hygiene Law former § 9.41 (cf., Gonzalez v State of New York, 110 AD2d 810, appeal dismissed 67 NY2d 647). Accordingly, Supreme Court's dismissal of plaintiff's cause of action for false arrest/imprisonment was proper.

Supreme Court also properly dismissed plaintiff's cause of action based on 42 USC § 1983 since summary judgment may be granted where, viewing the evidence in the light most favorable to plaintiff, the facts indicate that it was objectively reasonable for defendants to believe that they were acting in a manner that did not violate plaintiff's Federally protected rights (see, Ying Jing Gan v City of New York, 996 F2d 522, 532).

To establish that plaintiff's excessive force claim lacks merit, defendants must demonstrate that they used objectively reasonable force when taking plaintiff into custody (see, Messina v Mazzeo, 854 F Supp 116, 129).[1] Their proof is that Police Officers Carl Shedlock and Rick Parisian found plaintiff sleeping in bed on his stomach. Parisian knelt on the bed, held plaintiff down and handcuffed his hands behind his back. Plaintiff offered some resistance but was subdued by Parisian. As plaintiff was being led downstairs he made verbal threats against Shedlock and also attempted to pull away and lunge down the stairs. He was again subdued by Parisian and placed in a patrol car. While plaintiff alleges that he was pulled from his bed, dragged down the stairs and pinned to the floor of the patrol car, he sought no medical treatment and only claims that he suffered "red marks" on his back and neck.[2] In light of

---

1. Because the excessive force inquiry is governed by the same "objective reasonableness" standard as the qualified immunity standard, we have not considered the qualified immunity defense in the context of this claim (see, Ford v Retter, 840 F Supp 489).

2. Plaintiff also alleges that Shedlock placed a gun against his head. We note that plaintiff first made this allegation approximately eight years after the incident in question and that it is not supported by evidentiary proof.

defendants' belief that plaintiff was dangerous and given the absence of visible injuries, we concur with Supreme Court's finding that plaintiff's excessive force claim lacks merit *(see, Owens v Colburn,* 860 F Supp 966).

Finally, as there is no evidence of any official policy or custom of defendant City of Oneonta which caused the alleged violation of plaintiff's constitutional rights and as municipalities are not liable under the doctrine of respondeat superior for violations of 42 USC § 1983, Supreme Court correctly dismissed the action against the City *(see, Canton v Harris,* 489 US 378; *Monell v New York City Dept. of Social Servs.,* 436 US 658).

We have considered plaintiff's other arguments and found them unpersuasive. For these reasons, we affirm.

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Ordered that the order is affirmed, without costs.