OPINION OF THE COURT
John L. Bell, J.
Claimant contends that a State Trooper used excessive force *734 when, on February 23, 1994, the Trooper sprayed him with pepper spray (oleoresin capsicum) during an incident that occurred following his arrest for driving while intoxicated in the Village of Keeseville, Clinton County. Issues of first impression are implicated since no reported decision in this jurisdiction has addressed the use of pepper spray by police officers.
Claimant, who was 37 years old, 6 feet 3 inches in height and weighed approximately 185 pounds on the date of his arrest, testified that after he finished work about 9:00 p.m. he went to a local bowling alley, consumed five or six bottles of beer in an hour and then walked to his home in the Village of Keeseville, Clinton County. Thereafter, while driving his automobile, he was stopped by Troopers Michael Macintosh and Charles Dutko for failing to use a signal light while turning. Upon questioning by the Troopers, claimant admitted that he had consumed alcohol earlier. After conducting a field sobriety test, the Troopers arrested claimant and transported him to the police substation in Keeseville for a breathalyzer test. Although claimant insisted that he had not been handcuffed before being driven to the substation, Trooper Macintosh testified that claimant had indeed been handcuffed. Claimant was not abusive in any manner before he entered the substation. Trooper Macintosh testified that the handcuffs were removed at the substation and claimant was permitted to telephone his mother, Esther Neverett. Upon discovering that a breathalyzer device was not available at the substation, the Troopers decided to transport claimant to the Plattsburgh State Police Barracks for a breathalyzer test.
Trooper Macintosh related that as he, Trooper Dutko and claimant were exiting the substation, claimant, upon seeing his mother, kicked the door of the substation and became agitated. Claimant’s mother, Mrs. Neverett, recalled that the Troopers and her son were preparing to leave the substation as she arrived and that one of the Troopers advised her that the “breathalyzer was out of order.”[1] As the Troopers were preparing to place claimant in the Troop car, Trooper Macintosh advised claimant that he had to be handcuffed. Thereupon, claimant thrust his hands into his pockets and, according to Mrs. Neverett, swore when he was asked to take his hands out of his pockets. She further testified that her son refused to remove his hands from his pockets and stated: “Why the ‘f---’ do I have to take my hands out of my pockets?” She stated that *735 when she told claimant to remove his hands from his pockets he said that he would not do so. Claimant also told the Trooper to “open the ‘f......’ door.”
Claimant admitted that one of the Troopers told him that he had to be handcuffed for transportation to the Plattsburgh State Police Barracks. Indeed, he testified that he believed that he had been requested three times to remove his hands from his pockets so that he could be handcuffed but that he had refused to do so. He further admitted that he was told that he would be sprayed with pepper spray if he did not remove his hands from his pockets. He recalled a hand being placed on one of his shoulders before the pepper spray hit him in his eyes.
Trooper Macintosh, who has been a Trooper for nine years, testified that upon claimant’s first refusal to remove his hands from his pockets, he placed a hand on one of claimant’s elbows to attempt to pull one of claimant’s hands from his pocket. He asserted that he placed a hand on claimant when he again asked claimant to remove his hands from his pockets and claimant refused to comply. He testified that he advised claimant three more times to remove his hands, and in the process of so directing claimant, told claimant he would be sprayed with pepper spray if he refused to comply with the command. Upon claimant’s continued refusal, the Trooper administered one shot of pepper spray to claimant’s face. After being sprayed, claimant immediately removed his hands from his pockets. He was then handcuffed and driven to the Plattsburgh State Police Barracks where a breathalyzer test was administered.[2] At the barracks, claimant was taken to the men’s restroom so that he could wash his face and he was given wet paper towels to use.
In describing the use of force continuum employed by the State Police in effecting an arrest, Trooper Macintosh described the first five degrees in ascending order as (1) presence of uniform; (2) verbal command; (3) placing hands on arrestee; (4) use of pepper spray; and (5) physical force and defensive tactics. A sixth degree, deadly physical force, may be resorted to only when the exigencies prescribed by Penal Law § 35.30 are present.
After being arraigned and released on bail, claimant sought medical treatment at the emergency room of the Elizabethtown *736 Community Hospital between 9:00 and 10:00 a.m. on February 24, 1994 and was prescribed antibiotic eye drops. Claimant testified that he saw an “eye specialist” thereafter. He stated that he was sick for three days following the incident and had sore eyes for eight days. Claimant is not contending that he sustained any permanent injuries.
Claimant subsequently commenced the instant action alleging that the use of pepper spray constituted excessive force.[3] While there are no reported decisions by State courts in New York regarding the use of pepper spray by police, the claim is nevertheless governed by the general principles applied in cases involving allegations of excessive force. A police officer is authorized to use force that is objectively reasonable under the prevailing circumstances (Higgins v City of Oneonta, 208 AD2d 1067, 1070, lv denied 85 NY2d 803; Arnold v State of New York, 108 AD2d 1021, appeal dismissed 65 NY2d 723). Liability, however, will attach if excessive force is employed ( Jones v State of New York, 33 NY2d 275; see, McCummings v New York City Tr. Auth., 81 NY2d 923, cert denied 510 US 991). Determining whether a police officer wielded excessive force requires a fact-specific analysis in which an array of factors may be relevant, including the nature of the officer’s intrusion, the severity of the crime, whether the suspect posed an immediate threat and whether the arrest was actively resisted (see, Graham v Connor, 490 US 386; Monday v Oullette, 118 F3d 1099; Lamb v City of Decatur, 947 F Supp 1261). The court must be cautious not to impose upon the strenuous and often dangerous circumstances encountered by police on the streets a standard unduly colored by the calm of the Judge’s Chambers (Johnson v Glick, 481 F2d 1028, 1033, cert denied sub nom. John v Johnson, 414 US 1033; see, Graham v Connor, supra; Lennon v Miller, 66 F3d 416, 425-426).
Here, the Troopers stopped claimant after observing him commit a traffic violation. However, upon questioning claimant and conducting a field sobriety test, the Troopers had probable cause to believe that claimant had committed the crime of driving while intoxicated. The court credits the testimony of Trooper Macintosh that claimant was handcuffed when he was transported to the Keeseville substation. Although claimant *737 initially cooperated with the Troopers at the scene and at the substation, he displayed anger and agitation as he was exiting the Keeseville substation. He kicked a door at the substation. Consistent with standard procedure and reflecting safety concerns in transporting an ostensibly intoxicated individual, Trooper Macintosh informed claimant that he had to be handcuffed. Claimant thrust his hands into his pockets and refused to cooperate. Despite repeated requests, claimant continued to refuse to remove his hands from his pockets and allow the Trooper to apply handcuffs. When Trooper Macintosh attempted to pull claimant’s hands out of his pockets, claimant resisted. The Trooper then warned claimant that he would spray his eyes with pepper spray if he did not remove his hands from his pockets. Claimant understood the warning but refused to accede to the command. A brief shot of pepper spray was thus used.
Claimant contends that the use of pepper spray when an immediate or manifest threat of violence by the arrestee does not exist is unreasonable. The Sixth Circuit’s decision in Monday v Oullette (118 F3d 1099, supra) is instructive with regard to such argument. Monday involved an action premised upon the use of pepper spray by police in order to facilitate moving the plaintiff, who was believed to have taken an overdose of pills, from his home to a hospital. Although the plaintiff had not exhibited hostile actions toward police, he refused to follow their orders even after receiving warnings that pepper spray would be used if he continued not to cooperate. The court found the officers’ actions reasonable as a matter of law and thus affirmed summary judgment dismissing the case. While the presence of violent behavior would certainly be a significant factor in justifying the use of pepper spray, the absence of violence does not preclude per se the use of pepper spray as a reasonable exercise of force.
Claimant also submitted to the court following trial various literature in which the purportedly potential harmful effects of pepper spray are discussed. Defendant’s objection to such information as an attempt to inteiject expert opinion outside the confines of the trial is well taken. Moreover, claimant in the case before the court did not suffer dire or deadly effects from the pepper spray. Indeed, he suffered no permanent injuries and the effects of the spray ostensibly subsided within approximately one week.
The court finds that under the prevailing circumstances the use of pepper spray did not constitute excessive force. The fol *738 lowing are some of the factors influencing the court’s conclusion: claimant displayed irrational behavior, including kicking a door and refusing to remove his hands from his pockets despite repeated requests; the handcuffing of claimant for transporting implicated a legitimate safety concern; the Troopers attempted other reasonable steps to gain claimant’s compliance with their order before resorting to pepper spray; claimant was given ample warning that pepper spray would be used; the use of actual physical force, determined by the Division of State Police to be a greater degree of force than the use of pepper spray, could well have resulted in physical injury to one or more of the participants involved in the arrest; and the brief spray did not inflict serious or permanent injuries.
The claim is thus dismissed.

. All quotations are taken from the court’s trial notes.

. Claimant admitted that he pleaded guilty to driving while intoxicated as a felony following the incident.

. In his posttrial memorandum of law, claimant argues that the use of pepper spray was both unconstitutional and constituted excessive force. No separate constitutional cause of action was alleged in the claim. Moreover, claimant failed to articulate any meaningful distinction between the analysis of the facts under a constitutional rubric and a common-law cause of action.