(February 5, 1998)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE QUINONES, Appellant. [670 NYS2d 1] —Judgment, Supreme Court, Bronx County (Efrain Alvarado, J.), rendered February 16, 1995, convicting defendant, after a jury trial, of second degree burglary, and sentencing him to an indeterminate term of from 3 to 9 years, unanimously affirmed.

On the night of December 14, 1992, defendant was admitted to Jacobi Hospital for treatment of a gunshot wound. Detective Scianimanico, who responded to the report of a shooting, was able to interview him briefly and then discussed his condition with medical personnel. Concerned that defendant might not survive his injuries and that the matter would become a homicide investigation, Scianimanico asked the hospital for defendant's clothing so that it could be examined and tested for evidence of gunpowder residue, blood or bullets. According to Scianimanico, this was standard police procedure for victims of serious shootings or possible homicides. The detective was given defendant's clothing, including his Nike sneakers, and proceeded to the crime scene. There, in addition to gathering information about the shooting, he learned that a basement-level apartment facing the alley where the shooting occurred had been burglarized that evening. The tenant, who was in the process of renovating the apartment, told Scianimanico that as he entered the alleyway that night, someone came through his window and attacked him. After a brief struggle, the tenant shot the intruder and fled to his brother's nearby apartment. The detective observed what appeared to be a Nike sneaker print on the interior side of the windowsill, where the tenant had laid fresh concrete that morning.

Eight days later, while still in the hospital, defendant was arrested for burglary and assault. After receiving *Miranda*

warnings, he told Scianimanico that he had been shot in the alleyway where two men were in the midst of an argument. Following a hearing, his motions to suppress the sneakers and statement were denied. At trial, a comparison of the sneaker print on the windowsill and defendant's sneaker was inconclusive, i.e., it could not be determined whether the print was made by or matched defendant's sneaker. In addition, no fingerprints found on the windowsill could be identified as belonging to defendant. Ballistic tests of defendant's jacket indicated that the shooting was "consistent with a contact shot," and a bullet that fell from defendant's jacket when Scianimanico picked it up at the hospital was identified as having been fired from the tenant's gun.

Defendant contends that the hearing court should have suppressed the sneakers because the police had no reason to believe that he had committed any crime, the sneakers could not possibly constitute evidence of the shooting, and the clothing could have been left in the custody of the hospital and retrieved at some later time pursuant to a warrant. Under the circumstances, we do not believe that the taking of defendant's clothing, including his sneakers, constituted an impermissible seizure in violation of his Fourth Amendment rights.

According to the evidence credited by the hearing court, the clothing was taken in the belief that it could yield evidence in a potential homicide case in which defendant was the victim. It is true, as defendant argues, that, when the clothing was requested and turned over, the detective did not suspect defendant of any criminal conduct; indeed, he was unaware that any crime other than the shooting had been committed. However, the absence of any suspicion directed toward defendant did not place a heavier burden on the police to justify taking possession of items belonging to him as evidence of a serious crime in which he was the victim. The purpose of the exclusionary rule is hardly served in such circumstances by precluding the police from taking prompt action in good faith to apprehend the assailant. Thus, Scianimanico's action to preserve possibly critical evidence, by immediately taking the clothing with him pursuant to standard police procedure, rather than trusting it to the hospital's custody, cannot be faulted in hindsight merely because the police subsequently learned that the victim himself had committed a crime. Indeed, the urgency and significance of taking immediate possession of the clothing is illustrated by the fact that a spent bullet fell from the jacket when the detective picked it up; had the clothing simply been left until emergency room personnel had the opportunity to put it away, dur-

ing which time it could have been handled or moved, this critical piece of evidence could easily have escaped notice.

Only recently, in *People v Lewis* (243 AD2d 256, 257), we observed that it was proper for the police to secure a defendant's "blood-soaked clothing" from hospital personnel in the emergency room as evidence of a stabbing; that defendant, who had seriously injured his robbery victim, had himself been stabbed during the incident. In the instant case, where defendant was viewed solely as a victim, it was no less permissible to take his clothing at the hospital as evidence of the shooting, rather than leave it in the hospital's custody.

Finally, we note that defendant, who moved to suppress only the sneakers, appears to agree that some articles of clothing might have yielded evidence relevant to the shooting, but that his sneakers could not. However, Scianimanico requested defendant's clothing, not the sneakers specifically, and, in any event, there is no way to predict at the outset of such investigation which articles of clothing will constitute evidence and which will not.

Defendant further argues that reversal is mandated because the prosecutor impermissibly introduced evidence on the People's direct case concerning defendant's refusal to answer a certain question following his *Miranda* warnings. During the course of Scianimanico's direct examination, he testified that, after being given *Miranda* warnings, defendant made the statement previously noted concerning where and how he had been shot. When the detective added that he had then asked defendant why he had been in the alleyway, defense counsel objected. After an off-the-record Bench conference, the objection was overruled, and the detective repeated that he had asked defendant to explain his presence, to which "there was a response, but I understand that I am not * * *." The court interrupted and instructed the jury to disregard the "last statement by the officer. You may consider that there was a response and that's the end."

Notwithstanding this instruction, to which there was no objection, the prosecutor then asked whether defendant had refused to answer the detective's question, to which the detective responded "Yes, he did." Defense counsel did not object to the prosecutor's question or the detective's answer. In summation, defense counsel argued that, at most, defendant had trespassed in the alleyway, and counsel did not object to the prosecutor's two summation references to defendant's refusal to answer the detective's question.

Although defendant's initial objection was overruled follow-

ing an off-the-record Bench conference, the court's interruption of the detective's subsequent response and its curative instruction indicate its determination that the jury should not hear the substance of defendant's response. It is well-established that when a defendant has invoked his constitutional privilege against self-incrimination, the People may not then use his silence against him on their direct case (*People v Conyers*, 49 NY2d 174, *vacated on related grounds* 449 US 809, *adhered to on remand* 52 NY2d 454). As a general matter, this principle applies whether a defendant refuses to answer any questions at all or responds to initial questioning and then declines to answer anything further (*People v Von Werne*, 41 NY2d 584). In the instant case, however, while the prosecutor should not have proceeded to elicit that defendant's response in fact consisted of a refusal to respond, defense counsel failed to object to either the question or the response, or to the prosecutor's summation comments in this regard. We thus agree with the People that defendant has utterly failed to preserve this issue for our review (*People v Waters*, 225 AD2d 444, 445, *affd* 90 NY2d 826; *People v Torres*, 220 AD2d 263, *lv denied* 87 NY2d 925).

We are further persuaded that, in any event, any error in this regard is harmless (*see, People v Waters, supra; People v Torres, supra; see also, People v Basora*, 75 NY2d 992, 994), given the compelling evidence against defendant, including his admission that he was in the alleyway that night; the complainant's testimony that he struggled with and shot the individual whom he had seen come through the window of his apartment; the evidence of the burglary; the evidence that defendant had been shot at close range; and the fact that the bullet in defendant's jacket had been fired from the complainant's gun. Concur—Milonas, J. P., Rosenberger, Nardelli, Wallach and Rubin, JJ.