*85 OPINION OF THE COURT
W. Patrick Falvey, J.
This case, under the facts presented, is one of first impression.
Defendant, Eric J. Yaniak, born February 18, 1984, was charged under sealed indictment dated May 7, 2001, on one count each of the class D felonies of criminal possession of a controlled substance in the fifth degree, in violation of Penal Law § 220.06 (1), and criminal sale of a controlled substance in the fifth degree, in violation of Penal Law § 220.31, both allegedly occurring on November 12, 2000.
The defendant moved for assorted forms of relief as requested in his notice of omnibus motion dated August 6, 2001.
The court subsequently ruled on the defendant’s motion and granted his application for a so-called Mapp hearing (Mapp v Ohio, 367 US 643) which was held, in the defendant’s presence, on November 13, 2001.
Based on the defendant’s motion papers, the District Attorney’s affirmation in opposition, the hearing where the court was able to observe the witnesses’ demeanor, the arguments had, all submissions by counsel and the proceedings herein, the court decides as follows:
Facts
The defendant, claiming to be aggrieved by an unlawful or improper acquisition of evidence, has moved to suppress certain contraband, to wit, marijuana and lysergic acid diethylamide (LSD) seized on or about November 12, 2000 from the defendant’s wallet.
The defendant asserts that seizure of the property and any subsequent scientific testing thereof were a result of an unlawful search and seizure.
Two witnesses testified, both on behalf of the People, to wit: Yates County Sheriff Deputies, Francis Ryan and Scott Backer. I give full credence to the testimony of these witnesses.
Deputy Ryan was dispatched to the residence of Kenneth Bedette located at 4369 Ferguson Corners Road in the Town of Potter, County of Yates. He arrived at approximately 3:08 a.m. on November 12th.
When he arrived he observed an individual (later identified as the defendant) running around uncontrollably in the thick brush in front of the Bedette residence.
*86 Deputy Scott Backer also responded arriving shortly after 3:00 a.m.
Deputy Ryan attempted to ascertain the defendant’s name, residence and the cause of any problem. However, the defendant was not responsive.
Deputy Backer observed that the defendant was wearing a wet wool sleeve shirt, talking incoherently and running in the bushes. He heard the defendant repeatedly say, “I’m dead, whose dead, your dead?”
The officers had the defendant examined by emergency services personnel who were present at the scene. Although the defendant was not suspected of committing any crime, the officers, based on their observations of the defendant, as well as conversations with others at the scene indicating that he might have taken LSD, took the defendant into custody pursuant to section 9.41 of the Mental Hygiene Law. Deputy Ryan then transported him to Soldiers and Sailors Memorial Hospital for an examination pursuant to said statute.
Upon arrival at the hospital medical personnel took the defendant to a room for observation. The deputies were not involved at this juncture nor were any of the hospital personnel acting at the direction of either officer.
While at the hospital, Deputy Ryan attempted to prepare a report regarding the defendant’s arrest under the Mental Hygiene Law. However, he was still unable to ascertain the defendant’s name and address.
While they waited, a nurse, although not requested to do so, gave the officers the defendant’s clothes which contained his wallet.
In an attempt to identify the defendant the officers inspected the wallet. While doing so Ryan found a packet (exhibit 1) and based on its odor and contents he believed it to be marijuana. He also found a small aluminum packet (exhibit 2) containing five pieces of paper. Both items were taken by the officers and secured for future laboratory analysis which later determined their contents to be marijuana and LSD.
The proof shows that the defendant was arrested under the Mental Hygiene Law and not for any crime. In addition, neither officer had a warrant or permission to search the defendant’s wallet.
Law
The People have the burden, in the first instance, of going forward to show the legality of the police conduct. (People v *87 Malinsky, 15 NY2d 86, 91.) The defendant, however, bears the ultimate burden of proving, by a preponderance of the evidence, that the physical evidence should be suppressed. (People v Alberti, 111 AD2d 860, lv denied 66 NY2d 760.)
Warrantless searches are per se unreasonable unless they are shown to fall within one of the exceptions to the warrant requirement (Coolidge v New Hampshire, 403 US 443; People v Goldstein, 116 AD2d 658). Here the applicable exception to be examined is search incident to an arrest.
Clearly, the deputies had a right, in the first instance, to approach the defendant and request information of him because his actions alone gave them some objective credible reason for that interference while not necessarily indicating criminality. (People v De Bour, 40 NY2d 210.) They were merely attempting to clarify the nature of the situation in their “public service function” as the defendant clearly appeared to be in distress. (See People v Engle, 74 AD2d 583.) And in doing so their minimal intrusion could include inquiring as to pedigree information. (People v Ennis, 197 AD2d 404, lv denied 82 NY2d 849.)
The defendant was in custody not for a crime but pursuant to the state’s legitimate and compelling interest in preventing an individual from harming himself or others under Mental Hygiene Law § 9.41. (See Matter of Von Holden v Chapman, 87 AD2d 66; also see People v Ripic, 182 AD2d 226, 232, appeal dismissed 81 NY2d 776.)
It is noted that custody under Mental Hygiene Law § 9.41 does not require proof that the person presents an immediate danger to others. (Higgins v City of Oneonta, 208 AD2d 1067, lv denied 85 NY2d 803.) Section 9.41 states that a police officer may take into custody and remove to an appropriate hospital “any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.” But, the statute does not require that the threat of substantial harm to oneself or others be evidenced by overt act, attempts or threats. (Higgins v City of Oneonta, 208 AD2d 1067.)
Here the uncontradicted testimony regarding the defendant’s prearrest behavior and incoherent speech gave the officers the right to make an initial inquiry and the results of that inquiry established the predicate for his arrest under the Mental Hygiene Law.
In the case at bar, the defendant was under arrest when he arrived at the hospital, but the officers did not request the *88 nurse to give them the defendant’s clothing. Even so, the relationship between hospital employees and patients needs to be examined in the context of the facts of this case.
Initially, a patient retains an expectation of privacy in clothing he or she entrusts to the hospital for safeguarding (People v Watt, 118 Misc 2d 930). Once the clothing is taken from the patient and secured by the hospital, the hospital becomes a bailee and the employees have no authority to permit the police to search (People v Watt, supra) or test (People v Hayes, 154 Misc 2d 429) the clothes without the consent of the patient. But, if property of the patient has not yet been safeguarded by the hospital, the police can seize the property to preserve its evidentiary value. For example, the police can seize property that could have been discarded or damaged had the police not confiscated it. (People v Quinones, 247 AD2d 216, lv denied 91 NY2d 1011.)
It is noted that in the case at bar the deputies did not seek or request the nurse to turn over the clothing. However that still may not negate the relationship of bailee/bailor.
Here, the nurse’s action did not elevate the hospital to a position of joint ownership with the defendant giving it standing to consent to a search. (People v Watt, 118 Misc 2d 930.) As Watt points out, the hospital was a bailee and in that position it had to exercise ordinary and reasonable care for the defendant’s clothes and it had no authority to allow the clothes to be taken without a warrant.
Therefore, it would appear that the defendant’s privacy interests were violated by the warrantless search of his clothes/ wallet and subsequent analysis of the packets because the hospital was a bailee without claim or right to the property and with no authority to release it or to test it without the defendant’s consent.
However, the case at bar is distinguishable from both Hayes (154 Misc 2d 429) and Watt (id.), since in those cases the clothes were already in safekeeping prior to each defendant’s arrest. Here, Mr. Yaniak was taken into custody while wearing the clothes containing his wallet.
Furthermore, the police can seize property of a patient if the seizure is incident to an arrest made upon the defendant’s arrival at the hospital. (People v Maldonado, 244 AD2d 759, 761-762.) Therefore, the officers were merely retrieving something to which they were entitled when they took them from the nurse. (People v Hayes, 154 Misc 2d 429, 434.)
*89 The court must determine if the warrantless search resulting in seizure of the wallet and subsequent scientific testing was reasonable and allowed under an exception to the warrant requirement, to wit, incident to an arrest.
Clearly, the deputies took the defendant to the hospital not for a crime, but for examination under the Mental Hygiene Law. They were unaware at the time that his clothing and/or wallet had any evidentiary value. And when they recovered the clothes and wallet there were no exigent circumstances. Was this a valid warrantless search incident to an arrest?
The strict enforcement of the exigent circumstances requirement in New York limits the use of delayed searches of containers. Ordinarily, any existing exigency will have been defused if the search is delayed. However, a search of a container is not considered delayed if it is “reasonably contemporaneous with the arrest.” (NY Suppression Manual § 13.06 [4], at 13-66.)
Furthermore, one class of containers may be subject to a warrantless delayed search, regardless of the existence of exigent circumstances. United States v Chadwick (433 US 1) limited the rule set forth in United States v Edwards (415 US 800), which permitted a warrantless search of a defendant’s clothing seized and searched 10 hours after his arrest, to items on the person and personal property “immediately associated with the person.”
For example, a wallet removed from the defendant’s person is subject to search at the time of arrest or even later. No issue of exigent circumstance is implicated because search of the wallet is presumed to be an extension of the search of the person. Thus, in People v Greenwald (90 AD2d 668), a delayed search of the defendant’s wallet that was in a sealed envelope in the police property room was upheld as incident to arrest.
Obviously, at the time of the search no exigent circumstances were operating that would have been required to search most containers. But Greenwald (id.) cited to Edwards for justification; the wallet was removed from defendant’s person and was part of the search of the person incident to a lawful arrest.
The case at bar involved a delayed search of a container (defendant’s wallet) incident to his lawful arrest under the Mental Hygiene Law.
Upon arrival at the hospital the defendant was turned over to medical personnel for observation. And while the officers waited, a nurse, without being requested to do so by either offi *90 cer, turned over the defendant’s clothes containing his wallet. These were items to which the officers were already entitled due to the defendant being under arrest.
Conclusion
The deputies did not need a warrant to take and search the defendant’s clothing and wallet or have the contents scientifically tested as the search was incident to a lawful arrest.
Therefore, exhibits 1 and 2 are admissible as well as the subsequent scientific test results.