United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 9, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-60561

---

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

TONY NEELY,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
For the Northern District of Mississippi

---

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    After filing an unsuccessful motion to suppress clothing taken from a hospital in which he was a patient, appellant Tony Neely proceeded to trial on charges of bank robbery and carrying or using a firearm during and in relation to a crime of violence. The jury convicted him on both counts, and the district court sentenced him to 380 months' imprisonment and five years' supervised release. He now appeals the district court's ruling on the motion to suppress and certain sentencing issues. We agree with Neely that the

district court reversibly erred in denying the motion to suppress, and therefore reverse his conviction and remand for a new trial.

I

Testimony presented at the hearing on the motion to suppress revealed that on November 9, 2000, at 10:45 a.m., a man wearing a red and white windsuit and a ski mask over his face and carrying a .380 pistol walked into the Trustmark Bank in Southaven, Mississippi, a town situated on the state line between Tennessee and Mississippi and a suburb of Memphis, Tennessee. Upon entering the bank he shot a single round from his weapon into the ceiling and proceeded to the teller counter. He yelled to the lone teller behind the counter, Glenda Wheeler, to get down on the floor, and kicked in the gate accessing the area behind the counter. Once he was behind the counter he located Wheeler's teller drawer and removed $17,097 in cash. Because the robber was covered from head to toe Wheeler was unable to identify his race or other identifying characteristics, nor were law enforcement officers who later viewed the bank's videotape of the robbery.

After recovering the money, the robber ran out of the bank and jumped into the passenger side of a maroon Mazda 626 that had been waiting for him in the bank parking lot. As the Mazda attempted to pull out of the parking lot, a dye pack placed by the teller into the wads of stolen money exploded. Eyewitnesses reported that, after the dye pack exploded, both the driver and passenger of the vehicle opened the car doors to let the smoke escape. As they did

2

so, the car hit a parked vehicle in the parking lot, and the jolt caused the passenger to drop currency onto the ground. As he leaned down to pick up the money, witnesses heard a pop and observed the passenger grab his chest or stomach area. Then both individuals exited the vehicle and ran across the lot to a waiting black SUV and got into that car. The SUV left the lot and headed north towards Memphis.

From the parking lot agents recovered several thousand dollars with red stain on it. They also took samples from the interior of the Mazda, which they observed was splattered with red dye. The only evidence recovered from inside the bank was the bullet in the ceiling, a small crowbar, and a .380 casing from the spent round.

A few minutes after the robbery a 911 call came in from the Tulane Apartments in Memphis, roughly four and a half miles from the bank. The caller reported that an individual in apartment two, a second-story apartment, had sustained a gunshot wound to his chest. An ambulance and police personnel responded to the call and arrived to find Neely wounded and lying in the kitchen of the apartment. The ambulance workers quickly secured Neely and transported him the to Regional Medical Center, also known as "The Med," in Memphis. At the foot of the rear stairs leading to the apartment police seized a banking bag and an empty plastic ice bag both stained with red dye.

At The Med, emergency personnel rushed Neely to the Shock Trauma Unit. During treatment the medical workers found it

3

necessary to remove Neely's clothing, which included a royal blue t-shirt and a pair of blue jeans. They placed the clothing in a plastic bag. Kerry Kirkland, the patient care coordinator for The Med's 7 a.m. shift, testified that when someone such as Neely is brought into the trauma unit suffering from a gunshot wound and covered with blood, and medical personnel finds it necessary to cut his clothing off of his body, it is inventoried, placed in a plastic bag, and put into the clothing storeroom at back of the unit. The clothing is maintained in the storeroom for five to six days and, if the owner does not claim it, it is thrown away. Kirkland further affirmed that the hospital considered such clothing to belong to the patient even while in the hospital's possession; that the staff at The Med does not consider the hospital to be an owner of the clothes.

While Neely was in surgery or shortly thereafter, a detective captain at the Southaven Police Department, acting on information from the Memphis Police Department, dispatched an officer to The Med to retrieve Neely's clothing. Although the officer had no warrant for the clothing, and police were then in the process of procuring an arrest warrant for Neely, medical personnel gave him Neely's clothes upon the officer's request. Lab analysis of the seized clothes revealed tear gas and red dye consistent with substances deployed in a dye pack.

Neely argued that the clothing and the lab results were inadmissible products of a warrantless search and seizure subject

4

to no exception to the warrant requirement.  The Government did not file a response to the motion,[1] but at the hearing held by the district court it argued that exigent circumstances – particularly the police captain's concern that the bloody evidence would deteriorate or be contaminated while in the hospital's possession – justified the seizure, and that, alternatively, Neely lost his privacy interest in the clothing by wearing them in front of hospital personnel and police officers after he was shot.[2]  The Government also suggested that the hospital was a joint possessor of the clothing and therefore it had authority to give them to the police, and that the seizure of the clothes was incident to Neely's arrest, since it closely preceded procurement of the arrest warrant and for all practical purposes Neely was under arrest at the time of the seizure since he was shackled to his bed.

After the hearing the district court, in a written opinion, denied the motion to suppress, concluding that Neely had no reasonable expectation of privacy in his clothes while they were in

---

[1] Although the Government sought and was given an extension of time in which to file the response, the docket sheet shows that it never filed the response.

[2] During oral argument the Government stated that it had raised the plain view exception to the trial court, but we find no explicit mention of plain view in the district court record. However, the Government did argue to the district court that Neely had no reasonable expectation of privacy in his clothing because Neely displayed it to police and medical personnel, and defense counsel conceded during oral argument that this could be read as an argument for plain view.  Therefore we will address the Government's plain view arguments.

the hospital's possession, since he voluntarily submitted himself to medical treatment wearing the bloody clothes. However, it rejected the Government's argument that possible deterioration of the defendant's clothes created exigent circumstances justified seizing the clothes without a warrant. The trial court further concluded that the forensic testing of the clothes constituted a reasonable search incident to the defendant's arrest. Neely now appeals.

## II

In reviewing a district court's determination of a motion to suppress, we accept the ruling unless clearly erroneous or influenced by an incorrect view of the law, viewing the facts in the light most favorable to the prevailing party, here the Government.[3] Neely argues that the district court erred in focusing on whether he had a valid privacy interest in his clothing at the time the police seized them, because the existence of a privacy interest is relevant to the constitutionality of a *search*, not a seizure. He urges that an illegal seizure can take place even in the absence of a valid privacy interest in the seized item as long as the defendant establishes that the seizure interfered with his constitutionally protected possessory interests in the property. Moreover, he argues, even if an officer would be justified in a brief temporary search or seizure of property based

---

[3] *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998).

6

on the theory that a defendant does not have a reasonable expectation of privacy in the property, a permanent seizure such as occurred in this case is not allowed without a warrant or without proof by the Government that an exception to the warrant requirement existed.

We find Neely's arguments meritorious. The Government's contentions that Neely had no valid possessory interest in the clothing because he abandoned that interest and that the hospital was a joint possessor of the clothing are unavailing. Numerous courts have held that an emergency room patient does not forfeit his possessory rights to clothing simply by walking (or in many cases being carried) through the hospital door.[4] As one New York state court has reasoned, "[o]nce the clothing is taken from the patient and secured by the hospital, the hospital becomes a bailee and the employees have no authority to permit the police to search or test the clothes without the consent of the owner."[5] That court, confronting a situation similar to this case, held that as a bailee the hospital was required "to exercise ordinary and reasonable care for defendant's clothes," and "had no authority to

---

[4] *See, e.g.*, *Jones v. State*, 648 So. 2d 669, 675 (Fla. 1994); *People v. Jordan*, 468 N.W.2d 294, 298-301 (Mich. App. 1991); *People v. Yaniak*, 738 N.Y.S.2d 492, 495-96 (Co. Ct. 2001); *People v. Hayes*, 154 Misc. 2d 429, 432-34 (N.Y. Sup. Ct. 1992); *People v. Watt*, 118 Misc. 2d 930, 931-34 (N.Y. Sup. Ct. 1983).

[5] *Yaniak*, 738 N.Y.S.2d at 495-96.

7

allow them to be taken without a warrant."[6]  It further explained that since the hospital had no authority to hand over the clothes, the only way the police could have legally taken them without a warrant – absent application of a recognized exception to the warrant requirement – was if the prosecution presented "evidence that [the] defendant determined permanently to discard his clothes."[7]  The court found no evidence supporting such a conclusion, instead noting that "the placing of the garments in the green plastic bag by hospital employees evinced an objective belief on their part that the items were still the personal property of the defendant and that, when he felt better, they would be returned to him."[8]

The Florida Supreme Court reached the same conclusion in *Jones v. State*, in which it held that officers violated a defendant's Fourth Amendment rights by seizing clothes that were in his hospital room.[9]  *Jones* clarified that what was at issue was a seizure, not a search, and therefore it was to be measured not by whether the defendant had a reasonable expectation of privacy in this clothes, but rather by whether the seizure "interfered with

---

[6] *Id.* at 932.

[7] *Id.*

[8] *Id.*

[9] *Jones v. State*, 648 So. 2d 669, 675 (Fla. 1994).

[the defendant's] constitutionally protected possessory interests."[10] The *Jones* Court reasoned:

> We agree with other jurisdictions that have addressed the issue. Because Jones never voluntarily abandoned either his clothing or other effects, he had no reason to believe that his belongings would be turned over to police without his authorization. Even though hospital staff generally has joint access to and control of personal effects [of a patient], the staff cannot consent to the search or seizure of the effects because it has no right to mutual use of a patient's belongings ....[11]

We adopt this reasoning, and hold that Neely did not forfeit his possessory interest in his clothing by entering The Med and that the officers presumptively violated his Fourth Amendment rights in retrieving the clothes from the hospital. The Government presented no evidence indicating that Neely had done anything to suggest he had given up the possessory interest in his clothes, and the hospital's policy of placing the clothing in a bag and putting it in a locker in the clothing storage room suggested that it was holding the clothes for him until he recovered. The Government's theory that the hospital jointly possessed the clothing and therefore had authority to hand them over to the police upon request also fails because the patient care coordinator called at the hearing testified that the hospital considers such clothing items the patient's possessions and does not consider itself an owner of the clothes. She further explained that clothing such as

---

[10] *Id.*

[11] *Id.*

9

Neely's, even when covered with blood, would be stored for the patient and only discarded if the patient or a family member did not attempt to retrieve the clothing after five to six days. The Government presented no evidence at the suppression hearing that hospital staff did not follow this procedure with regard to Neely's clothes. Therefore we find that Neely retained a sufficient possessory interest in the clothes to complain of this seizure and that, absent application of an exception to the warrant requirement, we must hold the seizure unreasonable under the Fourth Amendment.

III

The Government asserts that we should affirm the district court's ruling on the basis that police legally seized the clothes pursuant to the plain view doctrine. It contends that Neely's bloody clothes, evidence of a possible crime, were in plain view of the Memphis officers who accompanied the medical personnel into Neely's apartment, as well as to the hospital staff who treated Neely upon arrival at The Med. The argument is that the Memphis officers could not have seized the clothes while they were actually in plain view because it would have interfered with Neely's medical treatment, so it was only reasonable for them to alert the Southaven police so that they could retrieve the clothing after Neely arrived at the hospital.

As Neely points out, the difficulty with the Government's argument is that the plain view doctrine requires both that the

10

object be in plain view at the time of seizure and that the officer have a lawful right of access to the object.[12]  If accepted, the Government's line of reasoning would permit seizure of items that, while previously in plain view, are no longer in plain view at the time of seizure, and may not even be in a place lawfully accessible to the officer.  The practical implication of this argument is that the Government will be free to seize any object officers have previously seen in plain view.  In Neely's case the Southaven officer seized the clothing after the Memphis officers saw it in plain view at the apartment, and the officer who retrieved the clothes did not have a lawful right of access to the storage room or the plastic bag in which the hospital had stored Neely's clothing.  These facts do not fit within the four corners of the plain view doctrine.

IV

We similarly reject the Government's argument that the seizure of the clothes was incident to arrest.  Neely contends that this was not a seizure incident to arrest because that exception applies only to a search of his person or the area immediately around him,

---

[12] *See United States v. Paige*, 136 F.3d 1012, 1023 (5th Cir. 1998) ("[T]he Supreme Court has identified several conditions that must be satisfied before a plain view seizure of an object is upheld: (1) the officer conducting the seizure must lawfully arrive at the position from which the object is plainly seen; (2) the object must be in plain view; (3) the object's incriminating character must be immediately apparent – *i.e.,* the officer must have probable cause to believe the object is contraband or evidence of a crime; and (4) the officer must have a lawful right of access to the object itself.")..

but here the officer seized the clothing from a completely different area of the hospital than where Neely was located.[13] The Supreme Court's decision in *Chimel v. California*, which held that officers' search of the defendant's entire house during an arrest did not escape the warrant requirement, supports Neely's argument.[14] In that case the Court reasoned that during an arrest it is reasonable for the arresting officer "to search the person arrested in order to remove any weapons the latter might seek to use to resist arrest or effect his escape," and to "search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."[15] It continued,

> [T]he area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.[16]

Although "ample justification" supports "a search of the arrestee's person and the area 'within his immediate control,'" meaning "the area from within which he might gain possession of a weapon or destructible evidence," the *Chimel* Court explained that no justification exists "for routinely searching any room other

---

[13] *United States v. Helmstetter*, 56 F.3d 21, 23 (5th Cir. 1995).

[14] *Chimel v. California*, 395 U.S. 752 (1969).

[15] *Id.* at 762-63.

[16] *Id.*

12

than that in which an arrest occurs," or even "for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant."[17] Applying *Chimel*, in *United States v. Johnson* we held that officers illegally searched a defendant's briefcase during his arrest when the briefcase rested eight feet away from the defendant – not "reaching distance" and therefore not "under his immediate control."[18]

Under *Chimel* and *Johnson* we cannot say that the seizure of Neely's clothing was incident to his arrest because the clothing was far removed from Neely, and there are no indications that he could have attempted to destroy the clothing, given that, at the time it was seized, he was either in surgery or shackled to his

---

[17] *Id*.

[18] *United States v. Johnson*, 16 F.3d 69, 71-73 (5th Cir. 1994).

13

hospital bed.[19]  This exception simply does not apply to the facts of this case.[20]

V

The Government has conceded that harmless error does not apply, and that we should remand it for a new trial if we find the motion to suppress should have been granted.  We find the district court erred in denying Neely's motion to suppress, REVERSE Neely's conviction, and REMAND for a new trial.  We do not reach the other points of error.

REVERSED and REMANDED.

---

[19] *See, e.g.*, *People v. Hayes*, 154 Misc. 2d 429, 433 (N.Y. Sup. Ct. 1992) (Holding in a nearly identical case that "[t]he search by scientific testing, as well as the seizure of the clothing which allowed for that testing, were not incident to defendant's arrest. The arrest ... occurred when the police posted a guard in Hayes' hospital room.  His clothing was seized later, on another floor, from a hospital attendant.  The seizure was not contemporaneous with arrest, either spatially or temporally.  Accordingly, the rationale for a warrantless seizure and search incident to arrest – to prevent the use of an available weapon or the destruction of evidence – is unavailing in this case." (citing *Chimel*, 395 U.S. at 763)).

[20] The district court rejected the Government's argument that exigent circumstances warranted seizure of Neely's clothing at the hospital, and on appeal the Government does not reurge that exigent circumstances applies.  Therefore, we do not address whether the evidence presented to the district court would have supported a finding of exigent circumstances.