■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIFTON SALVODON, Appellant. [6 NYS3d 674]—

Appeal by the defendant from a judgment of Supreme Court, Queens County (McGann, J.), rendered June 18, 2012, convicting him of assault in the first degree, burglary in the first degree (two counts), robbery in the first degree, and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence. The appeals brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence and information obtained from his cell phone.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress physical evidence and information obtained from his cell phone is granted, and a new trial is ordered.

On the morning of November 20, 2007, two men brandishing guns entered a home in Queens and demanded money from the occupants of the home. The homeowner shot one of the intruders, and the intruders fled. Prior to fleeing the home, a ring was taken from a guest of the home. The defendant was arrested and charged with crimes relating to this incident, and he moved, inter alia, to suppress a ring and information obtained from his cell phone, which were recovered by the police from his personal belongings while he was being treated at Franklin Hospital Medical Center (hereinafter the hospital) for a gunshot wound. The Supreme Court denied that branch of the defendant's motion, and we reverse.

At the suppression hearing, a detective from the Nassau County Police Department (hereinafter the Nassau detective) testified that, on November 20, 2007, at approximately 11:00 a.m., he heard a notification "go over the radio for . . . either . . . a burglary or robbery that occurred in the 105th Precinct" in Queens. Shortly thereafter, the Nassau detective received a phone call from police officers at the hospital indicating that a male was brought in with a gunshot wound. The Nassau detective did not have any information indicating that the call from the hospital was related to the incident being reported in the 105th Precinct. The Nassau detective went to the hospital, and

upon his arrival, he spoke to two police officers, who informed him that the name of the individual with the gunshot wound was Shakeem Solomon. These officers had, in an opaque plastic bag, that individual's personal belongings, which included, among other things, a silver ring with diamonds and a cell phone. The hospital personnel had taken the belongings from the individual, placed them in the bag, and given it to the police.

The Nassau detective testified that he tried to question the individual about the shooting while the individual was being wheeled to the operating room, but the individual refused to answer any questions except to state that he had been robbed. The Nassau detective testified that he held onto the bag containing the individual's personal belongings for the purpose of safeguarding it. Then, another Nassau County detective at the hospital proceeded to remove the cell phone from the bag and began to "go through" it for the purpose of locating contact information for the individual's next of kin. Names and numbers taken from the cell phone were relayed to another detective at the station house. From this information, it was discovered the individual had lied about his name, and that the individual was the defendant, Clifton Salvodon.

The People also called a detective from the New York City Police Department's 105th Precinct (hereinafter the Queens detective) to testify at the hearing. The Queens detective testified that, on the evening of the incident, the Nassau detective showed him the personal belongings that had been recovered from the defendant. The Queens detective photographed the belongings with his cell phone and sent the image to another detective at the 105th Precinct station house. The guest of the subject home whose ring had been taken identified the ring in the photograph as belonging to him.

"On a motion by a defendant to suppress physical evidence, 'the People have the burden of going forward to show the legality of the police conduct in the first instance' " (*People v Spann*, 82 AD3d 1013, 1014 [2011], quoting *People v Whitehurst*, 25 NY2d 389, 391 [1969]). Here, the People did not meet this burden. The People's contention that the police had probable cause to search the bag containing the defendant's personal belongings because it contained evidence of a crime is without merit (*see People v Alston*, 122 AD3d 934, 935 [2014]; *see also People v Cook*, 85 NY2d 928, 931 [1995]). The defendant had an expectation of privacy in his personal belongings despite the fact that he was being treated at the hospital and his belongings had been taken by hospital personnel and given to the po-

lice for the purpose of safeguarding them (*see People v Alston*, 122 AD3d at 935; *see also Berger v New York*, 388 US 41, 50 [1967]). "[T]he fact that the [police] perceived the defendant to be a victim rather than a suspect did not strip the defendant of Fourth Amendment protection" (*People v Alston*, 122 AD3d at 935), regardless of the Nassau detective's testimony that the cell phone was searched for the purpose of finding next of kin information.

The People's contention that exigent circumstances to search the defendant's belongings existed was never advanced before the hearing court and, therefore, may not be considered here (*see People v Johnson*, 64 NY2d 617, 619 n 2 [1984]; *People v Thompson*, 118 AD3d 922, 924 [2014]; *People v Hall*, 35 AD3d 1171, 1172 [2006]).

Accordingly, that branch of the defendant's omnibus motion which was to suppress the physical evidence and the information obtained from his cell phone should have been granted. We further conclude that this error was not harmless beyond a reasonable doubt (*see People v Harper*, 100 AD3d 772, 774 [2012]), as the evidence of the defendant's guilt, without reference to the ring or the information obtained from the defendant's cell phone, was not overwhelming. Accordingly, the judgment must be reversed, and a new trial ordered.

The defendant's contention, raised in his pro se supplemental brief, that the grand jury proceeding was impaired because the homeowner gave perjured testimony is without merit. During the grand jury proceedings, the homeowner testified that while the defendant was in his home, he wrestled the defendant's gun away from him and used that gun to shoot the defendant. However, during direct examination of the homeowner at trial, he testified that he shot the defendant with his own unlicensed gun, which he kept in his bedroom. During cross-examination, the homeowner admitted that he lied to the grand jury about wrestling a gun away from the defendant. Contrary to the defendant's contention, the indictment was sufficiently supported by competent evidence, and the false testimony concerning the identity of the owner of the gun used to shoot the defendant was immaterial (*see People v Johnson*, 54 AD3d 636, 636 [2008]; *People v Davis*, 256 AD2d 200, 201 [1998]; *see also People v Bryant*, 234 AD2d 605, 605-606 [1996]). Moreover, there was no suggestion that the prosecutor knew that the homeowner's testimony was false at the time it was given (*see People v Johnson*, 54 AD3d at 636).

The defendant's remaining contention, raised in his pro se supplemental brief, that the Supreme Court improvidently

exercised its discretion in denying his application for a missing witness charge, is without merit (*see People v Savinon*, 100 NY2d 192, 197 [2003]; *People v Kitching*, 78 NY2d 532, 536 [1991]; *People v Gonzalez*, 68 NY2d 424 [1986]). Leventhal, J.P., Hall, Austin and Roman, JJ., concur.