[68 NE3d 679, 45 NYS3d 860]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY PERKINS, Appellant.

Argued November 16, 2016; decided December 20, 2016

**POINTS OF COUNSEL**

*Patterson Belknap Webb & Tyler LLP*, New York City (*Stephen P. Younger, Harry Sandick* and *Ryan M. Mott* of counsel), and *Lynn W.L. Fahey, Appellate Advocates*, New York City (*Erica Horwitz* and *Paul Skip Laisure* of counsel), for appellant.

434

*Richard A. Brown, District Attorney*, Kew Gardens (*Nancy Fitzpatrick Talcott, Robert J. Masters, John M. Castellano* and *Joseph N. Ferdenzi* of counsel), for respondent.

**OPINION OF THE COURT**

ABDUS-SALAAM, J.

On this appeal, we must determine whether there was record support for the lower courts' finding that two of the four lineups conducted were not unduly suggestive. We hold that there was not.

## I.

After defendant was identified as a suspect in several gunpoint robberies, the detective assigned to the case used the New York City Police Department's photo manager system to create photo arrays with his picture. In both arrays relevant here, defendant and all five "fillers" had visible dreadlocks. Each of the four victims (AB, SP, MB and MH) chose defendant's photo. No issue is raised on this appeal as to the reliability of these identifications. Approximately three weeks later, the case detective conducted lineups with the same four victims.[1] It is undisputed that at the lineup, defendant was the only participant with long dreadlocks, which were plainly visible despite the hats provided to all of the men. Again, all four victims identified defendant. Defendant was arrested and indicted for several counts of robbery. Subsequently, he moved to suppress the identification procedures.

After a *Wade* hearing, Supreme Court granted defendant's motion to suppress the lineup identifications with respect to two victims (AB and SP) but denied it with respect to the other two victims (MB and MH). The court found that defendant's

---

1. Detectives also conducted lineups with several other victims in connection with this pattern of robberies. Those incidents were not tried in connection with these four.

dreadlocks were "distinctive." However, its conclusions of law as to the four lineup procedures differed solely based upon whether the relevant identifying witness had given a prior description of the perpetrator to police in which dreadlocks "figured prominently." The court concluded that because AB and SP had described their assailant as having dreadlocks, when they viewed the lineup where defendant was the only one with this distinctive feature, the lineup was unduly suggestive. However, the court also concluded that because MB and MH had not mentioned dreadlocks to the police, the same lineup was not unduly suggestive as to them, despite the presence of the same distinctive feature. The court cited several cases from the Appellate Division in support of its conclusion that a distinctive feature renders a lineup unduly suggestive only if it "figured prominently" in the viewer's prior description of the perpetrator to the police.

After an independent source hearing for AB and SP, the court concluded that the People had established an independent basis for them to make in-court identifications of defendant at trial despite the suppression of their lineups. During the trial, AB, SP and MH all identified defendant in the courtroom. MB did not. The jury acquitted defendant of the robbery counts with respect to AB and SP and convicted him of the counts with respect to MH and MB.

The Appellate Division affirmed, stating that the dreadlocks did not render the lineups unduly suggestive, because defendant's "hairstyle was not part of the subject complainants' descriptions of the perpetrator" and "was minimized by the fact that the participants all wore hats" (*People v Perkins*, 124 AD3d 915, 915 [2d Dept 2015]). A Judge of this Court granted defendant leave to appeal (25 NY3d 1205 [2015]), and we now reverse.

## II.

At the outset, we note that whether a lineup is unduly suggestive is a mixed question of law and fact, and so long as there is record support for a suppression court's conclusion, the issue is beyond our review (*see People v McBride*, 14 NY3d 440, 448 [2010]). Here, Supreme Court referenced a line of decisions from the Appellate Division which supported its different conclusions as to the four victims. Several Appellate Division cases have held that a defendant's distinctive feature does not render a lineup unduly suggestive unless that feature figured

prominently in the witness's description (*see e.g. People v Jordan*, 44 AD3d 875, 876 [2d Dept 2007], *lv denied* 9 NY3d 1035 [2008]; *People v Ryan*, 45 AD3d 1363 [4th Dept 2007], *mod on other grounds* 12 NY3d 28 [2009]). The Second Circuit has also found that even where a defendant in a lineup has a distinguishing characteristic—in that case a black leather coat—the lineup may be unduly suggestive as to one viewer who has stressed that particular characteristic in giving a description to police but not to another who has not (*see Raheem v Kelly*, 257 F3d 122, 134 [2d Cir 2001]).

Though these cases from the Appellate Division suggest that a witness's prior mention of a distinctive feature can be a determinative factor in a lineup's suggestiveness, we hold that a bright-line rule in this area would be unworkable, and unwise. A lineup's suggestiveness should not turn solely on whether a defendant's distinctive feature figured prominently in a witness's prior description. Rather, a witness's prior description is but one factor a court should consider in determining whether the lineup is one that "create[s] a substantial likelihood that the defendant would be singled out for identification" (*People v Chipp*, 75 NY2d 327, 336 [1990]). Our review remains limited and deferential to the suppression court's findings on this mixed question of law and fact. Indeed, as we have already stated in the context of showups, identifications "are by their nature fact-specific; no two are ever going to be exactly alike. . . . To the extent we indulge in second-guessing reasonable decisions made by the lower courts when applying the broad principles by which we have advised them to evaluate [identifications], we only sow confusion" (*People v Howard*, 22 NY3d 388, 403 [2013]).

We apply the same principles here. We by no means propose that a lineup is unduly suggestive, as a matter of law, merely because a defendant has a different hairstyle than some or all of the fillers. We further decline to categorically state what features may be considered so "distinct" as to render a lineup unduly suggestive. But here, the courts below concluded that defendant's dreadlocks were distinctive—so much so that they rendered the lineup unduly suggestive as to the two victims, AB and SP, who had mentioned the perpetrator's hairstyle in their initial description to the police. This conclusion is supported by the lineup photographs introduced into evidence at the hearing, which clearly depict defendant as the only person with long, visible dreadlocks. We note that this problematic

distinction was heightened because all four victims had viewed a photo array some time earlier that depicted all participants with dreadlocks. The lower courts' conclusion that this same distinctive feature was not unduly suggestive for MB and MH was premised solely on their having not included dreadlocks as part of their descriptions. No other findings of fact were made that would distinguish the outcomes from one another. Since our holding here clarifies that a witness's failure to mention a distinctive feature in his or her initial description is not necessarily the determinative factor in assessing a lineup's suggestivity, here, we must conclude that there was no record support for the lower courts' denial of suppression for the MB and MH lineups.[2]

## III.

Both lineups should have been suppressed. Because MB was unable to identify defendant in court, and the lineup identification was the only evidence linking defendant to that incident, the robbery count relating to her must be dismissed. Since MH did identify defendant at trial, we remit that count to Supreme Court for an independent source hearing, should the People choose to proceed in that manner. In light of our decision on the lineups, we need not reach defendant's remaining arguments. Accordingly, the order of the Appellate Division should be reversed, defendant's motion to suppress the lineup identifications granted, the second count of the indictment dismissed, and the case otherwise remitted to Supreme Court for further proceedings in accordance with this opinion.

Chief Judge DiFIORE and Judges PIGOTT, RIVERA, STEIN, FAHEY and GARCIA concur.

Order reversed, defendant's motion to suppress the lineup identifications granted, the second count of the indictment dismissed, and case otherwise remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.

---

**2.** Defendant's further arguments about disparities in height, weight and age between him and the fillers are unnecessary for resolution of the issue before us, and, in any event, are unavailing. We recognize that "[t]here is no requirement . . . that a defendant in a lineup be surrounded by people nearly identical in appearance" (*People v Chipp*, 75 NY2d 327, 336 [1990]).