People v Gough (2022 NY Slip Op 01317)





People v Gough


2022 NY Slip Op 01317


Decided on March 2, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
PAUL WOOTEN
DEBORAH A. DOWLING, JJ.


2018-03460
 (Ind. No. 3089/14)

[*1]The People of the State of New York, respondent,
v
Elijah Gough, appellant.


Patricia Pazner, New York, NY (Cynthia Colt of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and Nancy Fitzpatrick Talcott of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Kenneth C. Holder, J.), rendered February 15, 2018, convicting him of murder in the second degree (three counts), assault in the first degree, kidnapping in the second degree, burglary in the first degree (four counts), attempted robbery in the first degree (four counts), and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and sentencing him to an indeterminate term of imprisonment of 25 years to life on each conviction of murder in the second degree, determinate terms of imprisonment of 20 years plus 5 years of postrelease supervision on the convictions of assault in the first degree, kidnapping in the second degree, and each conviction of burglary in the first degree, and determinate terms of imprisonment of 10 years plus 5 years of postrelease supervision on each conviction of attempted robbery in the first degree and each conviction of criminal possession of a weapon in the second degree, with the sentences imposed on the convictions of murder in the second degree under count 1 of the indictment, assault in the first degree, and kidnapping in the second degree to run consecutively to each other, and with all other sentences to run concurrently with each other and with the consecutive sentences. The appeal brings up for review the denial, after a hearing (Gregory Lasak, J.), of those branches of the defendant's omnibus motion which were to suppress his statements to law enforcement officials, physical evidence, and identification evidence.
ORDERED that the judgment is modified, on the law and as a matter of discretion in the interest of justice, (1) by vacating the conviction of kidnapping in the second degree, vacating the sentence imposed thereon, and dismissing that count of the indictment, (2) by vacating the conviction of murder in the second degree under count 3 of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment, and (3) by directing that the sentence imposed on the conviction of assault in the first degree shall run concurrently with the remaining sentences; as so modified, the judgment is affirmed.
On the evening of December 5, 2014, three men wearing masks forced themselves into a residence located in Queens. Two of the three residents who were there at the time were shot, one fatally, before the three suspects fled. On the same evening, the defendant was admitted to the emergency room at Brookdale Hospital in Brooklyn with a gunshot wound to his leg. He was questioned by a Brooklyn detective about the gunshot wound while at the hospital that evening, but the questioning stopped when the defendant said he needed to rest. A bag of the defendant's clothing was removed from his hospital room by the police that same evening, without his consent.
The next day, the defendant was again questioned by the detective about the gunshot wound, and he eventually implicated himself in the shooting the night before in Queens. The questioning ended once the defendant admitted to his participation in that shooting. A detective from Queens then arrived at the hospital, read the defendant his Miranda rights (see Miranda v Arizona, 384 US 436), and thereafter obtained an oral and written confession from him.
Contrary to the defendant's contention, the Supreme Court properly denied that branch of his omnibus motion which was to suppress the statements he made to law enforcement officials prior to the administration of Miranda warnings. The defendant was not in police custody at the time of these statements, and the questions by law enforcement officials were investigatory in nature (see People v Gore, 117 AD3d 845, 846). The court also properly denied that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials made after the administration of Miranda warnings (see id. at 846).
The Supreme Court erred in denying that branch of the defendant's omnibus motion which was to suppress DNA evidence obtained from the defendant's clothing taken from the hospital on the night of the shooting. "On a motion by a defendant to suppress physical evidence, the People have the burden of going forward to show the legality of the police conduct in the first instance" (People v Spann, 82 AD3d 1013, 1014 [internal quotation marks omitted]). Here, the People failed to meet their burden. The defendant had a legitimate expectation of privacy in his clothing, and the fact that the police perceived the defendant as a victim rather than a suspect at the time his clothing was seized did not strip the defendant of his Fourth Amendment protection (see People v Salvodon, 127 AD3d 1239, 1241; People v Alston, 122 AD3d 934, 935). Moreover, the People failed to establish that the testifying detective knew that the clothes would have covered the part of the defendant's body where he was shot, as the detective admitted that he did not know what type of clothing was in the bag that was seized (see People v Sanders, 26 NY3d 773, 777). The People also failed to establish any exigent circumstances to justify seizure of the clothing, as they provided no evidence that the clothing was in danger of being removed or destroyed (see People v Knapp, 52 NY2d 689, 695-696). Accordingly, the seizure of the defendant's clothing at the hospital was illegal, and the DNA evidence obtained from the items seized should not have been admitted into evidence at trial (see People v Sanders, 26 NY3d at 778). However, under the circumstances presented here, the admission of that evidence was harmless (see People v Quinones, 247 AD2d 216, 219). The defendant submitted a DNA sample beyond that which was obtained from this clothing, rendering the DNA evidence obtained from the clothing irrelevant at trial.
The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress identification evidence. "There is no requirement that a defendant who participates in a lineup be accompanied by individuals who are nearly identical to [the defendant]" (People v Villacreses, 12 AD3d 624, 625). "Skin tone is only one of the factors to be considered in deciding 'reasonable similarity,' and differences in skin tone alone will not render a lineup unduly suggestive (id. at 625, quoting People v Miller, 199 AD2d 422, 423). "A lineup's suggestiveness should not turn solely on whether a defendant's distinctive feature figured prominently in a witness's prior description. Rather, a witness's prior description is but one factor a court should consider in determining whether the lineup is one that 'create[s] a substantial likelihood that the defendant would be singled out for identification'" (People v Perkins, 28 NY3d 432, 437, quoting People v Chipp, 75 NY2d 327, 336). Here, the photographs taken of the lineup reflect that the slight differences in skin tone between the defendant and the fillers were not so apparent as to orient the viewer toward the defendant as the perpetrator of the crimes charged (see People v Spence, 92 AD3d 905, 905).
The defendant's contention that a surveillance videotape was not properly authenticated is preserved for appellate review (see CPL 470.05[2]). Nevertheless, contrary to the defendant's contention, the Supreme Court did not improvidently exercise its discretion in admitting the surveillance videotape into evidence at trial (see People v Fuentes, 185 AD3d 960, 962). The People presented sufficient evidence that the videotape accurately represented the events depicted (see People v Grant, 170 AD3d 888, 890).
The defendant's contention that the testimony of a criminalist from the Office of the Chief Medical Examiner violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution (see People v John, 27 NY3d 294) is unpreserved for appellate [*2]review (see CPL 470.05[2]), and we decline to review this contention in the exercise of our interest of justice jurisdiction (see People v Rios, 102 AD3d 473, 474). The defendant's contention that his counsel was ineffective for failing to assert a Confrontation Clause challenge is without merit (see People v Benevento, 91 NY2d 708).
However, as the People concede, the defendant's conviction of kidnapping in the second degree and the related conviction of murder in the second degree under count 3 of the indictment are precluded by the merger doctrine (see People v Mateo, 148 AD3d 727, 728). Accordingly, we vacate those convictions and the sentences imposed thereon, and dismiss those counts of the indictment.
The sentence imposed was excessive to the extent indicated herein (see People v Suitte, 90 AD2d 80).
BARROS, J.P., CHAMBERS, WOOTEN and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court