People v Nagy (2024 NY Slip Op 51043(U))

[*1]

People v Nagy

2024 NY Slip Op 51043(U)

Decided on August 13, 2024

County Court, Wyoming County

Cianfrini, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 13, 2024
County Court, Wyoming County

The People of the State of New York,

against
Eric Nagy, Defendant.

IND No. 9095

Vincent A. Hemming, Esq.
Acting Wyoming County District Attorney
Teo Siguenza, Esq.
Attorney for Defendant

Melissa Lightcap Cianfrini, J.

An indictment has been filed against the Defendant, Eric Nagy, (hereinafter "Defendant") accusing him of one count each of unlawful surveillance in the second degree and criminal mischief in the second degree and two counts each of unlawful dissemination or publication of an intimate image (hereinafter, the unlawful surveillance and unlawful dissemination counts shall collectively be referred to as "the Unlawful Surveillance/Dissemination Cases"), criminal mischief in the third degree and criminal mischief in the fourth degree (hereinafter, all criminal mischief counts regardless of degree shall collectively to referred to as the "Criminal Mischief Cases" also sometimes referred to as the criminal mischief incidents or complaints if referenced during the investigatory phase). 
The defense sought and the prosecutor consented to a combined Huntley/Mapp hearing, which was conducted before this Court on March 28, 2024. Post-hearings submissions were submitted on May 8, 2024 by defense counsel and May 29, 2024 by the prosecutor. This case presents two distinct issues, which will be discussed in seriatim. One, whether the Defendant's Fifth Amendment rights against self-incrimination were violated after being released from custody when he was questioned without the presence of an attorney on a separate matter. Two, whether law enforcement violated the Defendant's Fourth Amendment rights when it seized, but did not search, the Defendant's cell phone without a search warrant.
 Findings of Fact
During the combined Huntley/Mapp hearing, the People called Wyoming County Sheriff's Office Investigator Bradley McGinnis (hereinafter "Inv. McGinnis" or "the Investigator") to testify. I give full credence to the testimony of the People's sole witness, Inv. McGinnis. The Defense did not call any witnesses at the hearing. 
Inv. McGinnis testified that he was attempting to locate the Defendant on July 21, 2023 due to the existence of an active warrant for the Defendant issued for crimes allegedly committed in the Unlawful Surveillance/Dissemination Cases only. Inv. McGinnis located and arrested the Defendant on the warrant that same day in Greece, NY. The Defendant was read his Miranda warnings and invoked his right to counsel. The Defendant was not questioned by law enforcement on these matters due to the filing of charges and the issuance of an arrest warrant. The Defendant was then transported to the Town of Warsaw Justice Court for arraignment. He was represented by an assistant public defender as stand-by counsel at arraignment.
Following the arraignment, Inv. McGinnis informed the Defendant that he was no longer in custody and "free to leave." The Defendant indicated he did not have transportation back to his residence. Inv. McGinnis offered to and did drive the Defendant to the Wyoming County Sheriff's Office (hereinafter "WCSO") to assist with finding the Defendant transportation back to Greece, NY. During the ride, Inv. McGinnis inquired whether the Defendant understood the Order of Protection that was issued by Family Court in Wyoming County and that it was "important" to follow it. During this conversation, Inv. McGinnis questioned the Defendant about an open investigation regarding an incident that allegedly involved property damage in two separate complaints occurring in the Town of Middlebury. These incidents occurred a few days prior to the Defendant being arrested in Greece, New York on the Unlawful Dissemination/Surveillance Cases. The complainant in the Unlawful Surveillance/Dissemination Cases was also one of the complainants in the Criminal Mischief Cases.
The Investigator advised that he did not want to talk to the Defendant about the incidents that occurred nine months ago, those being the Unlawful Surveillance/Dissemination Cases. The Investigator questioned the Defendant about the criminal mischief incidents. At the time of this questioning, it was an open investigation and no accusatory instruments regarding those incidents had been filed with the court. At no time did Inv. McGinnis question the Defendant about the incidents related to the Unlawful Surveillance/Dissemination Cases. 
The Defendant denied being in the area at the time of the criminal mischief incidents and stated, "it must have been someone else that looked like [him]." The entire conversation was captured on Inv. McGinnis' Body Worn Camera (hereinafter "BWC") and the recording itself was received into evidence at the hearing as People's Exhibit #1 with no objection by the defense. The Court has reviewed it in its entirety. 
After arriving at the WCSO, Inv. McGinnis requested to search the Defendant's cell phone, specifically the text messages between the Defendant and the complainant in the Criminal Mischief Cases and the photos contained on the phone. The Investigator believed that there was evidence on the Defendant's cell phone regarding the Criminal Mischief Cases due to the victim stating that the Defendant sent a text to her stating, "I'm at your house" and forwarded a photo of a field near her home via text at the approximate time that the property damage occurred. The Investigator advised the Defendant of the existence of this text and photo during the interview. 
The Defendant denied Inv. McGinnis' request to review his cell phone. At that point, Inv. McGinnis took the Defendant's cell phone without a search warrant based upon his concern that the Defendant would potentially destroy evidence from the cell phone. The Defendant's cell phone was powered down and was not searched at that time. Within one day, Inv. McGinnis applied for and obtained a search warrant from this Court to search the Defendant's cell phone.

Conclusions of Law
Regarding the Suppression of Defendant's Statements:
With respect to the statements made relative to the Criminal Mischief Cases, the Court makes the following conclusions of law as set forth below. The Defendant, claiming to be aggrieved by an unlawful or improper acquisition of evidence, has moved to suppress statements made by him on July 12, 2023 to Inv. McGinnis as set forth in the People's CPL §710.30 Notice and on Inv. McGinnis' BWC on the grounds that it was involuntarily made within the meaning of CPL §60.45.
A confession or admission is admissible at trial in this State only if its voluntariness is established by the People beyond a reasonable doubt. When a defendant is subjected to custodial interrogation, the prosecutor's burden also includes the duty to prove beyond a reasonable doubt that a defendant was advised of his Miranda rights and that he knowingly and voluntarily waived those rights. People vs. Williams, 62 NY2d 285 (1984).
The key determination in this matter turns on whether the Defendant was "in custody" at the time he made statements regarding the Criminal Mischief cases. This Court determines that the Defendant was not in custody at the time of such statements as discussed infra. 
Contrary to defense counsel's assertions, the Defendant's "indelible right to counsel" had not attached pursuant to People v Bing, 559 NY2d 331 (1990) and its progeny. New York has long viewed the right to counsel as a cherished and valuable protection that must be guarded with the utmost vigilance (see e.g. People v. Harris, 77 NY2d 434 [1991]). Arising from the due process guarantee in our State Constitution, the entitlement to effective assistance of counsel and the privilege against compulsory self-incrimination, the right to counsel is referred to as "indelible" because, once it "attaches," interrogation is prohibited unless the right is waived in the presence of counsel (see Bing, 76 NY2d at 338—339). Attachment occurs when (1) a person in custody requests the assistance of an attorney or a lawyer enters the case or (2) a criminal proceeding is commenced against the defendant by the filing of an accusatory instrument (see People v. West, 81 NY2d 370, 373—374 [1993] ).
When an attorney enters a case to represent the accused, the police may not question the accused about that matter regardless of whether the person is in police custody (see People v. West, 81 NY2d at 375). If, however, the police seek to question the suspect about a matter that is not related to the case that the attorney is handling, different rules apply (People v. West, 81 NY2d at 377).
In the seminal case of People v. Rogers, 48 NY2d 167 (1979), the Court of Appeals established that an individual who is in custody for an offense and is represented by counsel on that case may not be questioned about any matter—related or unrelated to the crime for which there is legal representation—unless the accused validly waives the right to counsel (see People v. Rogers, 48 NY2d at 169). Simply put, the Rogers rule states that the indelible right to counsel activates the moment that an attorney becomes involved (see id. ["once an attorney has entered the proceeding ... a defendant in custody may not be further interrogated in the absence of counsel"]; People v. Steward, 88 NY2d 496, 501 [1996][emphasis supplied] ["Rogers establishes and still stands for the important protection and principle that once a defendant in custody on a particular matter is represented by or requests counsel, custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or [*2]obtained, must cease"])[emphasis added]. 
The Rogers rule is eminently straightforward and requires inquiry on three objectively verifiable elements—custody, representation and entry (see e.g. People v. Burdo, 91 NY2d at 149; People v. Steward, 88 NY2d at 502; People v. West, 81 NY2d at 377; Bing, 76 NY2d at 350). In People v. Lopez, 16 NY3d 375 (2011), the Court of Appeals re-emphasized that custody was a key determination in whether the indelible right to counsel attached when it overruled People v. Bartolomeo, 53 NY2d 225 (1981) stating that the previous rule was unworkable, because it created a "derivative right to counsel" that attached to a new criminal offense whenever a suspect was represented by counsel in connection with unrelated pending charges and regardless of whether the suspect was in custody on the pending charges. People v. Lopez, 16 NY3d at 384 citing Bing, 76 NY2d at 350). 
In our current case, the People proved beyond a reasonable doubt that the Defendant was not in custody and that his statements were voluntary. After his arraignment on the Unlawful Surveillance/Dissemination Cases, he was released by the local court on his own recognizance and provided a return court date. He told the Investigator that he did not have transportation back to Greece, New York. The Investigator suggested that he could provide the Defendant with a ride to the WCSO to see if the Investigator could find another officer to provide him with a ride to Greece. The Investigator advised the Defendant he was no longer in custody and free to go. Under these facts, a reasonable person innocent of any crime, would not have thought that he was still in police custody (People v. Yukl, 25 NY2d 585, 58 [1969]).
For the same reasons, the Defendant was not subject to custodial interrogation and thus, Miranda warnings did not need to be administered. See id. Accordingly, the Defendant's motion to suppress the Defendant's statements made on July 21, 2023, as it relates to the Criminal Mischief Cases set forth in the People's Notice of Intention pursuant to CPL §710.30 and People's Ex. #1 is DENIED.
Regarding the Warrantless Seizure of the Defendant's cell phone:
Defendant, claiming to be aggrieved by an unlawful seizure, has moved to suppress the evidence obtained from his cell phone that was seized on his person by Inv. McGinnis on July 21, 2023. The Defendant has met his initial burden that he had a legitimate expectation of privacy in his cell phone. On a motion by a defendant to suppress physical evidence, the People have the burden of going forward to show the legality of the police conduct in the first instance (People v Gough, 203 AD3d 747 citing People v Spann, 82 AD3d 1013). In this case, the People assert that the seizure of the cell phone from the Defendant's person was due to exigent circumstances and that the search of such cell phone was performed after the issuance of a search warrant supported by probable cause and signed by this Court. The defense, however, bears the ultimate burden of providing by a preponderance of the evidence that the physical evidence should be suppressed because the police conduct was illegal. 
Whether law enforcement may seize an individual's cell phone without a warrant and not incident to an arrest appears to be an issue of first impression in this state. As such, a review of federal law on this topic and analogous state law is required. 
The United States Constitution and the New York State Constitution both protect individuals from unreasonable searches and seizures as set forth below:
The right of the people to be secure in their persons, houses, papers and effects, against [*3]unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
US Constit. Amend. XIV and NYS Constit. Art. I §12 (emphasis supplied). 
Federal case law permits the warrantless seizure of an individual's property under certain circumstances when such seizure is not subject to an arrest (See generally, US v. Place, 462 US 696 [1983]; US v. Burton, 2018 US App. LEXIS 35555 [4th Cir. 2018]. Under federal law, a seizure of personal property is per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized (see, e.g., Marron v. United States, 275 US 192, 196 [1927]) or where a recognized exception to warrant requirement exists. One such example is where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, if the exigencies of the circumstances demand it (see Place, 462 US at 701). Unless exigent circumstances also support a warrantless search, the seized object should not be examined unless or until a search warrant has been issued. Id. 
In US v. Burton, an unreported case, but nearly factually identical to the case at bar, the Fourth Circuit affirmed the district court's holding that the warrantless seizure of the defendant's cell phones was justified pursuant to the exigent circumstances exception (US v Burton, 756 Fed.Appx. 295, 297 [4th Cir. 2018]). The police were investigating allegations that the defendant attempted to take a photo underneath a woman's skirt (an up-skirt photo) at a grocery store. The defendant participated in two voluntary interviews with police. During the first interview, the defendant appeared with two cell phones and acknowledged being near the complainant with a cell phone, but denied taking any up-skirt photos of her. The police officer seized both cell phones. Two days later, the officer sought and obtained a warrant to search both cell phones. At the hearing, the officer testified that he thought he had probable cause to seize the phones given his interview with complainant and he feared the defendant would destroy the digital photos or phones themselves. 
In determining whether exigent circumstances exist to justify a warrantless seizure, federal courts use the following 3-prong test:
(1) Whether the police had probable cause to believe that the seized item contains contraband or evidence of a crime;
(2) Whether the police had "good reason to fear" that absent such seizure, the defendant would destroy material evidence before the officers could obtain a warrant; and
(3) Whether the police "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy".
Burton, 756 Fed. Appx. at 298-299. The Fourth Circuit found that the police had probable cause following the initial interview to seize Mr. Burton's phones. Moreover, the court reasoned that the police had a "good reason to fear" the evidence would be destroyed if Mr. Burton left the interview with the phones, because he now knew he was the subject in an investigation and the investigating officer had voiced skepticism to him regarding his explanations. Id. at 299. The court noted the ease with which Mr. Burton could have deleted, transferred, or otherwise removed the digital photos from the phones and found the officer reasonably assumed that the [*4]evidence or phones themselves would be spoliated. This court also determined that the police made sufficiently "reasonable efforts" to balance law enforcement's needs with Mr. Burton's Fourth Amendment privacy rights as the officer investigated the complainant's claims, provided Mr. Burton with an opportunity to provide his version of the events, did not immediately arrest him, and secured a search warrant before searching the digital media on the phones. 

Lastly, the court held that the two-day delay in obtaining the warrant was reasonable. It reasoned that the duration of the seizure was far shorter that other instances where the federal courts deemed a delay reasonable or unreasonable (e.g., US v Mitchell, 565 F.3d 1347, 1352-53 [21-day delay unreasonable]; US v Burgard, 675 F.3d 1029, 1033 [6-day delay reasonable]; US v. Laist, 702 F.3d 608-616-17 [25-day delay reasonable]) and was a relatively minor intrusion into Mr. Burton's possessory interests in the phones. Id. at 300. 
New York case law is legion in its recognition that a warrantless seizure of property need not be incident to an arrest, but may occur where the police have an independent basis to believe that such property constitutes evidence that will assist in the prosecution of a crime (see generally, People v Thomas, 188 AD2d 569, 571[ 2nd Dep't 1992] app. den. 81 NY2d 1021[Second Department affirming warrantless seizure of blood spattered sneakers during defendant's interview at police station]; People v Pinkney, 90 AD3d 1313, 1315 [Third Department affirming police agent's temporary seizure of an apartment while securing a search warrant]; People v Osorio, 34 AD3d 1271, 1272 [Fourth Department noting "that the securing of a dwelling, on the basis of probable cause, to prevent the destruction of [drugs and weapons] while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or the contents]). 
However, when a warrantless seizure of property occurs, the police must satisfy two requirements in order to justify the action taken. First, law enforcement must have reasonable cause to believe the seized item constituted evidence or tended to demonstrate that an offense had been committed or that a particular person participated in the commission of an offense (Thomas, 188 AD2d at 571 citing Payton v. New York, 445 US 573, 587; Warden v Hayden, 387 US 294, 307). Second, exigent circumstances of a sufficient magnitude existed to justify the immediate seizure of property without resort to a warrant (People v. Clements, 37 NY2d 675, 680-81[1975]). This Court is adopting the two-part test utilized in Thomas. 
In applying this two-part rule to the case at bar, this Court finds the People have sustained their burden. With respect to the first part of the rule, the Investigator had reasonable cause to believe that Defendant Nagy's cell phone contained evidence of a crime and the identification of the perpetrator relating to the Criminal Mischief cases by his investigation which included the following:
(1) An interview with one of the complainant's regarding the existence of text messages (including a texted photo of a field near the crime scene) between the complainant and Defendant wherein he stated that he was at or near the crime scene and the timing of such texts and photos placed him at or near the scene at the time of the damage; and
(2) The interview with the Defendant providing him with an opportunity to give his side of the story to law enforcement and the Investigator advising the Defendant about the alleged existence of such texts and photos.
Applying the second part of the rule, the People again sustained their burden that sufficient exigent circumstances existed to justify the immediate and temporary seizure of the property without making application for a search warrant. Given the nature of cell phones and [*5]the ease with which digital photos, texts and metadata information can be removed, transferred or destroyed by remotely wiping the phone, deleting the texts and photos, uploading the information to cloud storage, destroying the cell phone entirely and/or secreting away the cell phone, the investigator was justified in temporarily taking the phone from the Defendant's possession without his consent. The Defendant was now on notice that law enforcement was aware of the existence of such texts and photos by one of the complainants and was currently a subject of the investigation. Moreover, the Investigator had expressed doubt as to some of the Defendant's statements during the interview. 
The Defendant's challenge as to the length of the 24-hour delay in securing a search warrant for the cell phone is of no moment. This short delay is in line with federal cases (cited above) and state case law (People v Pinkney, 90 AD3d 1313, 1316). It was also a relatively minor intrusion into the Defendant's possessory interests in the phone thereby reconciling law enforcement needs with the demands of personal privacy. The defense has failed to prove by a preponderance of the evidence that the cell phone evidence should be suppressed because the police conduct was illegal. 
Accordingly, the Defendant's motion to suppress the physical evidence is hereby DENIED. 
The foregoing constitutes the opinion, decision, and order of the court. 
DATED: August 13, 2024
Warsaw, New York
HON. MELISSA LIGHTCAP CIANFRINI
Acting Wyoming County Court Judge