

# NUMBERS 13-23-00566-CR, 13-23-00567-CR, 13-23-00568-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                   Appellant,

v.

GILBERTO PEREZ,                                       Appellee.

## ON APPEAL FROM THE 226TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Peña

Appellant, the State of Texas, appeals the trial court's order partially granting the pre-trial motion to suppress evidence filed by appellee, Gilberto Perez. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). The order suppressed (1) evidence searched and seized at a hospital while Perez was receiving emergency medical treatment for a gunshot wound, and (2) statements he made after being arrested based upon the seized evidence. We reverse and remand.

## I. BACKGROUND[1]

In three separate cases, Perez was charged by indictment with: (1) aggravated assault with a deadly weapon, *see* TEX. PENAL CODE ANN. § 22.02(a)(2)[2]; (2) murder, *see id*. § 19.02[3]; and (3) drug offenses related to the possession of methamphetamine and cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112 (prohibiting the possession with intent to deliver a controlled substance listed in Penalty Group 1), .115 (prohibiting the knowing or intentional possession of a controlled substance listed in Penalty Group 1).[4]

In his written suppression motion,[5] Perez claimed that the arrest for each offense "was made without valid warrant, or probable cause, or reasonable suspicion" and that any statements he made in connection with these arrests, or any evidence seized, should

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] Trial court cause number 2020-CR-8917; appellate cause number 13-23-00566-CR.

[3] Trial court cause number 2020-CR-8918; appellate cause number 13-23-00567-CR.

[4] Trial court cause number 2020-CR-9417; appellate cause number 13-23-00568-CR.

[5] The operative pleading in all three cases is Perez's First Amended Motion to Suppress Evidence filed on October 18, 2023.

be suppressed. Perez also sought the suppression of statements he made at police headquarters, his hospital interview, physical evidence gathered at the scene, and the arrest warrants underlying the other non-drug charges against him.

The trial court held hearings on Perez's motion over numerous days from May through October of 2023. At issue during these hearings was the chain of custody of certain drugs found inside an orange cloth Crown Royal bag that formed the basis of the arrest warrant for Perez on drug charges. Perez was involved in a shooting on June 30, 2020. He and another individual were both transported to University Hospital in San Antonio for emergency medical treatment. Body-worn camera footage of responding officer Christina Gonzales of the San Antonio Police Department (SAPD) was admitted at the suppression hearings. This footage shows that Officer Gonzales first encounters Perez outside of the hospital. Perez has no shirt or jeans on and is laying on a gurney. His jeans can be seen hanging over the side of his gurney. A black pair of boots is also visible on top of the gurney. Officer Gonzales can be heard asking questions about the "shooting victims." Perez can be heard saying that he is "bleeding." Officer Gonzales follows Perez to a large operating room, where doctors are seen separately treating Perez on the right side of the room and the other individual on the left side of the room.

Perez was attended to by Marylou Gonzalez, a nurse who was employed as a property technician, a position created "[b]ecause the hospital was losing a lot of belongings to the patients, and they were paying for the belongings." She testified generally as to the policy and procedures for removing the clothing of patients for medical purposes and bagging them. She noted that Perez was considered an "alpha," or "gunshot wound patient," which requires that "all the doctors be present." Gonzalez

3

affirmed that, during the "ordinary course of business at the hospital," she removes clothing from patients "so that doctors can get a better access to potential wound areas and things of that nature." Gonzalez testified that "[w]henever it's a gunshot wound patient, we have to put [the belongings] in a brown bag, not a plastic bag." Gonzalez searched Perez's jeans and discovered a small baggie of putative marijuana. Gonzalez can be seen holding up Perez's jeans and the baggie up through the operating room's large windows, showing them to Officer Gonzales.

Gonzalez finished the search, collected Perez's belongings, and placed them in brown bags. Gonzalez also collected the items found on the other individual, who had died, and placed them in a separate brown bag. Gonzalez testified that she remembered specifically finding a large amount of money and an orange bag inside Perez's jeans.[6] Gonzalez handed the brown bags to Officer Gonzales. As to Gonzalez's actions, the trial court asked her the following:

| [Trial Court]: | I guess I'm asking, who are you acting on behalf of? Are you acting on behalf of the hospital or on behalf of a law enforcement agency? That's my question. |
| --- | --- |
| [Gonzalez]: | Both. |
| [Trial Court]: | You're doing both? |
| [Gonzalez]: | Yes, ma'am. |

Gonzalez also filled out a property disposal form that stated that Perez's belongings were taken as "SAPD evidence," but did not list any drugs or cash as being

---

[6] During her testimony at the suppression hearing, Gonzalez was shown a photograph admitted into evidence of the orange cloth Crown Royal bag that contained narcotics. Gonzalez positively identified that bag as the one she had found inside Perez's jeans.

4

found. There was no other inventory sheet to accompany the brown bags. On the body-camera footage, Gonzalez can first be seen giving Officer Gonzales two brown bags with Perez's belongings. Later, with Perez's belongings on her left, Gonzalez can be seen handing a separate brown bag to Officer Gonzales, which is placed on her right side. Officer Gonzales confirmed that this bag belonged to "the deceased." Gonzalez, pointing to the bag on Officer Gonzales's right, mentions that she "put the bullet in there."

Later, crime scene investigator (CSI) Olinda Cardenas of the SAPD arrived at the hospital to collect the bags of evidence. In one of the brown bags with Perez's belongings, she found the orange cloth Crown Royal bag and discovered eight small baggies of suspected narcotics inside. Although Cardenas admitted on cross-examination that she could not testify as to "who [the brown bags] belong to" "without an inventory from the hospital,"[7] she testified that she made sure to keep the belongings separate to avoid cross-contamination. Further, she particularly noted that she had associated the brown bag containing a "spent slug" with the deceased, and affirmed that "by process of elimination," she understood the other bags to belong to Perez.

The suspected narcotics weighed 25.4 grams and tested positive for methamphetamine. Detective Jeremy Goodwin testified that he used this information as the basis for the arrest affidavit for the drug charges against Perez. According to Perez, however, because there was no basis to establish that the methamphetamine belonged to him as opposed to the decedent, the arrest affidavit was improper, and any statements

[7] As Cardenas testified, she is "usually just handed bags," and "[i]If they've had time to properly do a general inventory of the belongings, they will have a nice property sheet for us." She noted that she would not be surprised to receive a bag without an inventory sheet: "Half the time they would give me something, other times everyone's busy, they don't want to talk to us so they're like 'here you go' and just out the door."

made to the SAPD connected to the illegal arrest should be suppressed.

The trial court partially granted Perez's motion to suppress as to the search and seizure of evidence at the hospital and statements he made after his arrest on the drug charges. Perez's motion was denied as to the suppression of statements he made at police headquarters, his hospital interview, physical evidence gathered at the scene, and the arrest warrants underlying the other non-drug charges against him. As to the search of Perez's jeans, the trial court made the following findings:

> Nurse Gonzales did not have the authority to search the pockets of [Perez]'s clothing with police closely observing; and Nurse Gonzales did not have the authority to hand [Perez]'s clothing and belongings over to police without a warrant.
>
> . . . .
>
> Upon review of . . . Officer Gonzales's body cam video documenting the seizure of [Perez]'s belongings and clothing, and based on Nurse Gonzale[z]'s testimony that she was acting on behalf of both the hospital and on behalf of law enforcement when she pulled drugs and cash out of the Defendant's clothing pockets, showed them to Officer Gonzales, and asked Officer Gonzales if she wanted them, this court finds that the police seizure of Defendant's belongings and the search inside of Defendant's clothing was not pursuant to a typical hospital inventory search, but rather was done at the behest of law enforcement.
>
> . . . .
>
> Because this court finds that the search of Defendant's clothing and seizure of the clothing, drugs, and cash was a warrantless search and seizure, and because this court finds that none of the exceptions to the warrant requirement apply, Defendant's motion to suppress the evidence seized at the hospital is GRANTED.

Further, after concluding that Detective Goodwin had "no way to confirm that the narcotics were in the possession of" Perez, the trial court found the statements in support of the arrest warrant to be insufficient to establish probable cause:

6

Based on the above, this court finds that the arrest of Defendant for possession of narcotics was made as a result of illegally seized evidence and based on an affidavit that failed to set forth sufficient probable cause. Therefore, this court finds that any statements made at the police station as a result of such arrest would be inadmissible.

After the trial court issued findings of fact and conclusions of law, this appeal followed.

## II.     ARGUMENTS OF THE PARTIES

Where the "State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense." *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998). However, the State may raise the issue of Fourth Amendment standing for the first time on appeal. *Id*. at 77–78 (citing *State v. Klima*, 934 S.W.2d 109 (Tex. Crim. App. 1996)).

The trial court granted Perez's motion to suppress as to the search of Perez's clothing and the "seizure of the clothing, drugs, and cash." In its first issue on appeal, the State relies mainly on two legal theories for reversal of the search and seizure ruling: (1) the private action doctrine and (2) the hospital inventory exception to the warrant requirement. *See State v. Ruiz*, 535 S.W.3d 590, 594 (Tex. App.—San Antonio 2017), *aff'd*, 577 S.W.3d 543 (Tex. Crim. App. 2019) ("The Fourth Amendment only applies to searches and seizures by agents of the government; it does not extend to the conduct of private persons who are not acting as government agents."); *Vargas v. State*, 542 S.W.2d 151, 155 (Tex. Crim. App. 1976) ("Inventory searches under proper circumstances have been held to be reasonable. In the instant case, the inventory was initiated pursuant to hospital policy for the protection of the hospital and the appellant's property. . . . We conclude that the inventory search under the circumstances presented was reasonable.").

7

However, because the State asks us to adopt case law applying the plain-view doctrine,[8] we liberally construe the State's first issue to also argue that the seizure of Perez's belongings was justified under the plain-view doctrine, which is equivalent to an argument that Perez failed to meet his burden at trial to establish standing to contest the seizure, which is an argument that may be made for the first time on appeal. *See Mercado*, 972 S.W.2d at 77–78; *Salinas v. State*, 625 S.W.3d 203, 212 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) ("To prevail on an alleged violation of the Texas exclusionary rule; the Fourth Amendment of the United States Constitution; and article I, § 9 of the Texas Constitution, a defendant must first establish his standing to challenge the admission of the evidence obtained by proof that he had a legitimate expectation of privacy in the place invaded."); *see also Horton v. California*, 496 U.S. 128, 141 (1990) (noting that "*the seizure of an object in plain view does not involve an intrusion on privacy*. If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view" (emphasis added)).

### III.   LEGALITY OF THE SEIZURE & SEARCH

### A.   Standard of Review & Applicable Law

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020) (citing *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016)). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law

---

[8] In particular, the State refers us to *Rodriguez v. State*, in which the First Court of Appeals concluded that the plain-view doctrine permitted the seizure of "clothes, shoes, cell phone, and wallet" found on a hospital table beside a gunshot patient. No. 01-17-00352-CR, 2018 WL 6696490, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. ref'd) (mem. op., not designated for publication). The State argues in part that "*Rodriguez* also demonstrates Officer Gonzales'[s] authority for taking possession of Perez's items."

8

and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id*. (citing *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019)). "We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id*. (citing *Sims*, 569 S.W.3d at 640). "When a trial judge makes written findings of fact, such as here, we examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *Salinas v. State*, 625 S.W.3d 203, 211 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (citing *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013)). "We then proceed to a de novo determination of the legal significance of the facts as found by the trial court." *Id*. (citing *Baird*, 398 S.W.3d at 226). "[A]ppellate courts may *uphold* a trial court's ruling on any legal theory or basis applicable to the case, but usually may not *reverse* a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised." *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (emphasis in original).

"The 'plain[-]view' doctrine permits an officer to seize contraband which he sees in plain sight or open view if he is lawfully where he is." *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013) (citation omitted). Three requirements must be met to justify the seizure of an object in plain view: "First, law enforcement officials must lawfully be where the object can be 'plainly viewed.' Second, the 'incriminating character' of the object in plain view must be 'immediately apparent' to the officials. And third, the officials must have the right to access the object." *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citations omitted).

9

**B.      Legality of the Seizure**

In concluding that the seizure of Perez's belongings was unconstitutional, the trial court applied only one case to the facts in its conclusions of law: *United States v. Neely*, 345 F.3d 366 (5th Cir. 2003). In *Neely*, appellant suffered a gunshot wound and was rushed to the hospital. *Id*. at 368. "During treatment the medical workers found it necessary to remove Neely's clothing . . . [and] placed the clothing in a plastic bag." *Id.* The bag was then inventoried and stored in a clothing storeroom. *Id*. "While Neely was in surgery or shortly thereafter, [law enforcement] dispatched an officer to [the hospital] to retrieve Neely's clothing. Although the officer had no warrant for the clothing . . . medical personnel gave him Neely's clothes upon the officer's request." *Id*. The court determined that Neely had a valid possessory interest in his clothing protected by the Fourth Amendment, and noted that "[n]umerous courts have held that an emergency room patient does not forfeit his possessory rights to clothing simply by walking (or in many cases being carried) through the hospital door." *Id*. at 369. The *Neely* court subsequently concluded that the plain-view doctrine did not apply because the clothing was stored in a separate room and was not "in plain view at the time of seizure." *Id*. at 371.

*Neely* is factually distinct from the instant case. In *Neely*, the bloody clothes were bagged outside of the presence of law enforcement and stored in a separate room away from the defendant. *Id*. at 368. Here, the trial court found that Perez's clothing "was searched *in the presence of law enforcement*, and it was placed in an unmarked bag and given directly to police." (Emphasis added). This key fact distinguishes this case from *Neely*. *See, e.g.*, *United States v. Alva*, No. 20-CR-140-PP, 2021 WL 1589549, at *7 (E.D.

Wis. Apr. 23, 2021) ("The Fifth Circuit's treatment of the plain-view exception[9] [in *Neely*] isn't particularly helpful in this case. The government did not argue to [the trial court] that the plain-view exception applied because law enforcement officers or hospital personnel had seen the defendant in bloody clothes before hospital personnel put them in a bag.").

Instructive here is *United States v. Clancy*, 979 F.3d 1135 (6th Cir. 2020). In *Clancy*, the defendant went to the emergency room with a gunshot wound to the arm. *Id*. at 1137. "Once he made it to the trauma room, medical personnel stripped off his clothes and piled them on the floor. . . . Two officers went to the hospital and walked into the emergency department, where they found Clancy and saw his clothing on the floor, 'out in the open' and visible from the hallway outside his room." *Id*. After Clancy was airlifted to another hospital, "crime scene investigators arrived . . . and found Clancy's bloodied clothes in a plastic bag. A crime scene investigator removed the clothes from the bag, then photographed each piece and put them in a paper sack." *Id*. The *Clancy* court concluded that the bloodied clothes were properly admitted under the plain-view doctrine, reasoning that the facts satisfied *Neely*'s legal standard:

> Many of the circumstances in *Neely*, it's true, parallel the facts here. Eerily so. . . . But these small-world similarities should not obscure a key difference: The *Neely* officers seized the bloodied clothes after they had already been removed, bagged, and transferred to the hospital's storeroom for safekeeping, far from sight. Because the object must 'be in plain view at the time of seizure' and because the officer must have 'lawful right of access,' the Fifth Circuit found the search unlawful. By contrast, this seizure fits *Neely*'s test. The hospital did not store Clancy's clothing or remove it from the trauma room while doctors attended to his gunshot wound. And the officers had lawful access because the hospital routinely called police upon receiving a gunshot victim. No doubt, someone at the hospital put

---

[9] As noted by the Fourth Circuit, the plain-view doctrine is "not an exception to the warrant requirement," but rather a determination that no illegal conduct occurred "because no privacy interests were implicated." *United States v. Davis*, 690 F.3d 226, 233 n.11 (4th Cir. 2012).

11

> Clancy's clothing into a 'plastic bag,' before the crime scene investigators arrived. But that was only after officers saw the evidence in the first place from the hallway.

*Id.* at 1139–40; *see* TEX. HEALTH & SAFETY CODE ANN. § 161.041 (imposing duty on medical personnel to "report the case at once" to law enforcement when treating "a bullet or gunshot wound"); *see also United States v. Mattox*, 27 F.4th 668, 674 (8th Cir. 2022) (concluding that a gunshot wound patient has a diminished expectation of privacy in a hospital room because "police in Minnesota are expected to show up to hospitals to investigate a gunshot-wound victim like Mattox because Minnesota law requires hospitals to report gunshot wounds to the police").

As in *Clancy*, here, police were investigating a shooting and saw Perez being taken into the operating room with his jeans visible. The jeans were not separately stored, and Gonzalez can be seen in the video recording holding up the jeans. Perez's jeans were in plain view, and the police had lawful access to the hospital because "the hospital routinely called police upon receiving a gunshot victim." *Id*. at 1140; *see also* TEX. HEALTH & SAFETY CODE ANN. § 161.041. Thus, unlike in *Neely*, the facts here support finding that the 'plain view at the time of seizure' and 'lawful access' prongs of the plain-view doctrine have been satisfied. *See Clancy*, 979 F.3d at 1139–40; *Keehn*, 279 S.W.3d at 334.

Left unanalyzed in *Neely* was the "incriminating character" prong of the plain-view doctrine. *See Keehn*, 279 S.W.3d at 334. In *Neely*, the Government claimed on appeal that Neely's bloodied clothes were "evidence of a possible crime." 345 F.3d at 371; *see United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) ("The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either *evidence of a crime* or contraband." (emphasis added)). The defendant

12

did not dispute this, but only argued that the Government failed to satisfy the other two prongs of the plain-view doctrine. *Id.* at 371 ("As Neely points out, the difficulty with the Government's argument is that the plain view doctrine requires both that the object be in plain view at the time of seizure and that the officer have a lawful right of access to the object."). It seems that the *Neely* court implicitly concluded that bloody clothes from a shooting victim have an incriminating nature. *See id.*; *see also Chavis v. Wainwright*, 488 F.2d 1077, 1078 (5th Cir. 1973) (finding that an officer was justified in seizing a stabbing victim's clothing, which had been removed and placed in a plastic bag by a nurse, and noting that an "officer, under the circumstances here present, would have been derelict in his duty had he not taken custody of Chavis'[s] clothing as evidence of a possible homicide that he was investigating"). This is consistent with numerous courts applying the plain-view doctrine to the seizure of bloody clothes from shooting wound patients because their incriminating nature was readily apparent, regardless of whether the patient was a victim or suspect. *See United States v. Davis*, 690 F.3d 226, 237–38 (4th Cir. 2012) ("[L]ike the bloody clothing in [other cases], the pants with a bullet hole, which would be clear evidence a shooting occurred and might reasonably provide scientific evidence related to the gun caliber, distance, etc., is evidence of a crime and hence, has an immediately apparent 'incriminating nature.'"); *Clancy*, 979 F.3d at 1138 ("Turn to the incriminating nature of Clancy's clothes. It's enough that the officers immediately had probable cause to believe the seized property was evidence of a crime."); *Sheffield v. United States*, 111 A.3d 611, 620–21 (D.C. 2015) ("It was readily apparent that the bloody clothes were evidence of a crime, regardless of whether Butler was a victim or a suspect. We conclude, therefore, that if Butler's pants were seized while he was a patient at Prince

13

George's County Hospital, the seizure was lawful pursuant to the plain[-]view exception to the warrant requirement.").

The circumstances here justify the application of the plain-view doctrine. The undisputed facts establish that Officer Gonzales first encountered Perez outside of the hospital, with his jeans and boots clearly visible.[10] She knew that he had been shot, and he can be heard on video saying that he is "bleeding." Officer Gonzalez then followed Perez into the operating room, where she could maintain visual contact with him. The trial court found that Gonzalez searched Perez's pockets "with police closely observing." We conclude the seizure of Perez's belongings under these circumstances was permitted under the plain-view doctrine. *See Clancy*, 979 F.3d at 1139–40; *see also Rodriguez v. State,* No. 01-17-00352-CR, 2018 WL 6696490, at *7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. ref'd) (mem. op., not designated for publication) ("*Neeley*, however, is inapposite. There, the Fifth Circuit held the plain-view doctrine did not allow the seizure of the patient's clothing because the clothing at issue was not in open view but in the hospital property storage room and required permission from hospital personnel to retrieve it. Similar facts are not present in this case." (citations omitted)).[11]

---

[10] The photograph of Perez's jeans admitted during the suppression hearing shows a large blotch of blood below Perez's front-left pocket. Although it is unclear whether the blood on the jeans was visible to Officer Gonzales, we note that the incriminating nature of the jeans was readily apparent based on other circumstantial factors as well, including the fact that Perez was a known shooting wound patient, he stated that he was "bleeding," and his clothing needed to be removed before arriving at the hospital to provide medical treatment. *See United States v. Davis*, 690 F.3d 226, 236–37 (4th Cir. 2012) ("We have little trouble, however, in concluding that Davis'[s] pants almost certainly would contain both blood and a bullet hole, and would thus be incriminating evidence in the prosecution of the shooter. Such a conclusion is based on the circumstances, Davis'[s] appearance, and the location of his bullet wound.").

[11] In *Rodriguez*, the court of appeals observed:

Appellant's clothes, shoes, cell phone, and wallet were on the table beside his bed in the emergency department. A photograph . . . shows the bag on the bedside table. The bag is

14

**B.** **Legality of the Search**

Because the seizure of Perez's belongings was permitted under the plain-view doctrine, the search of the jeans by Gonzalez before she handed the bags over to Officer Gonzalez is of no constitutional moment under the independent source doctrine. "At its core, the independent source doctrine provides that evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion." *Wehrenberg v. State*, 416 S.W.3d 458, 466 (Tex. Crim. App. 2013) (*citing Murray v. United States*, 487 U.S. 533, 537 (1988)).

> The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Murray*, 487 U.S. at 537(cleaned up).

"The independent source doctrine provides that evidence actually obtained pursuant to a distinct, untainted source is not subject to suppression because, in such cases, the prior illegality does 'not contribute in any way to discovery of the evidence seized under the warrant.'" *Wehrenberg*, 416 S.W.3d at 469 (quoting *Segura v. United States*, 468 U.S. 796, 810 (1984)). In such circumstances, there is "no causal link between the illegal conduct and the discovery or seizure of evidence." *Id*. "Because the

---

wide open, on its side, with the contents partially spilling out. Some items also appear to be next to the bag on the table. . . . [U]nlike in [*Neely*], the items here were in open view, and the police had access to the items while investigating the shooting of Appellant.

No. 01-17-00352-CR, 2018 WL 6696490, at *7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. ref'd) (mem. op., not designated for publication). Although unpublished, this is the only Texas case to cite *United States v. Neely*, 345 F.3d 366 (5th Cir. 2003).

independent source doctrine by definition applies only to situations in which there is no causal connection between the illegality and the obtainment of evidence," "evidence seized pursuant to an independent source is not 'obtained' in violation of the law." *Id*. at 470 (citing TEX. CODE CRIM. PROC. ANN. art. 38.23 ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.")).

The independent source doctrine applies here. Assuming that Gonzalez's search of Perez's jeans constituted illegal state action, there is simply no causal connection between this illegality and the discovery of the complained-of evidence.[12] We have already held that Officer Gonzales lawfully seized Perez's belongings as part of her shooting investigation. *See Clancy*, 979 F.3d at 1139–40. At the police station, pursuant to standardized policy, Cardenas inventoried Perez's belongings, which included opening the orange cloth bag containing narcotics, which served as the basis for the arrest warrant. *See Moskey v. State*, 333 S.W.3d 696, 701 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("In conducting an inventory search, the police may permissibly search locked and unlocked containers[.]" (citing *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976)). Gonzalez's search of Perez's belongings was neither the reason for the seizure of his belongings, nor the reason for the inventorying of his belongings at the police station. *See*

---

[12] As the State acknowledges in its brief, University Hospital is a public hospital. *See Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001) ("[A] state hospital, the members of its staff are government actors, subject to the strictures of the Fourth Amendment."). The State argues, however, that this fact was not in evidence, and was not relied upon by the trial court. Because we conclude that there is no causal connection between Gonzalez's search and the obtainment of the complained-of evidence, we need not address the State's argument and its attendant evidentiary issues.

*Segura*, 468 U.S. at 815 ("Our cases make clear that evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless the challenged evidence is in some sense the product of illegal governmental activity." (cleaned up)); *United States v. Scott*, 270 F.3d 30, 44–45 (1st Cir. 2001) ("The question in independent source cases is one of causation; suppression requires at least a finding that the challenged evidence would not have been obtained but for a constitutional violation as to the defendant in the case at issue."). Accordingly, the trial court erred in concluding that the complained-of evidence should be suppressed. *See Wehrenberg*, 416 S.W.3d at 470. We sustain the State's issues related to the seizure and search of Perez's belongings.

## IV. ARREST WARRANT

After determining that Perez's belongings were illegally searched and seized, the trial court concluded that the underlying arrest affidavit in his drug case lacked probable cause, and therefore "the statement he gave to police during custodial interrogation following his arrest for drug possession must be suppressed." As to probable cause, the trial court concluded that "Detective Goodwin's assertions in the affidavit to support probable cause are conclusory statements and thus insufficient to establish probable cause."

### A. Standard of Review & Applicable Law

An appellate court reviews sufficiency of an arrest warrant under the same bifurcated standard as applicable to the suppression of evidence. *See Valadez v. State*, 476 S.W.3d 661, 666 (Tex. App.—San Antonio 2015, pet. ref'd). However, because warrants are based on an underlying legal determination by a magistrate, we are

17

constrained to the four corners of the affidavit and "we use a substantial basis standard of review based on the totality of the circumstances presented to the magistrate." *Id.* (citing *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

"An arrest warrant affidavit must provide the magistrate with sufficient information to support an independent determination that probable cause exists to believe that the accused has committed a crime." *Id.* at 667 (citations omitted)). "To establish probable cause to arrest, the evidence must show that at that moment of the arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006) (cleaned up). Probable cause cannot be "based on mere conclusory statements of an affiant's belief." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). "An affiant must present an affidavit that allows the magistrate to independently determine probable cause and the magistrate's actions cannot be a mere ratification of the bare conclusion of others." *Id.* (cleaned up).

"A reviewing court's assessment of the affidavit's sufficiency is limited to 'a reasonable reading' within the four corners of the affidavit while simultaneously recognizing the magistrate's discretion to draw reasonable inferences." *Valadez*, 476 S.W.3d at 667. "The issue is not whether there are other facts that could have, or should have, been included in the affidavit; we focus on the combined logical force of facts that are in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 S.W.3d at 62.

**B.     Discussion**

As incorporated by the trial court in its findings of fact, Detective Goodwin's probable cause affidavit provided that after Perez was transported to University Hospital, "while the hospital staff was attending to the defendant, the defendant was found in possession of 25.4 grams of a crystal-like substance that was secured in eight separate plastic bags that are known to be used in distribution of narcotics." The affidavit states: "The narcotics were located in a peach colored 'Crown Royal' bag that was in the possession of the defendant." In finding this insufficient, the trial court concluded that issues with authentication and the chain of custody rendered Detective Goodwin's statements conclusory. According to the trial court, "Detective Goodwin testified [at the suppression hearing] that 'the narcotics were *supposedly* found on [Perez] at the hospital when he was taken to the hospital." (Emphasis in original). The trial court continued: "Nevertheless, Detective Goodwin states in his affidavit that [Perez] was 'found in the possession' of narcotics 'while the hospital staff was attending' to him." The trial court concluded that detective Goodwin's testimony at the motion to suppress hearing "contradicted" his affidavit because he indicated at the hearing "that there was no way to confirm that the narcotics were in the possession of" Perez.

The trial court did not properly apply the appropriate standard of review to the magistrate's probable cause determination. See *Rodriguez*, 232 S.W.3d at 62. The trial court's assessment of the affidavit's sufficiency went beyond a reasonable reading of the four corners of the affidavit. *See Valadez*, 476 S.W.3d at 667. To reach its conclusion that the affidavit statements were conclusory, the trial court relied on Detective Goodwin's allegedly "contradictory" testimony regarding Perez's possession of the drugs. However,

19

"[s]tatements made during a motion to suppress hearing do not factor into the probable cause determination; rather, we examine only the four corners of the affidavit to determine whether probable cause exists." *McKissick*, 209 S.W.3d at 212 (citations omitted)).

Detective Goodwin's statements in the affidavit were not so conclusory as to render them insufficient to establish probable cause. For example, in *Miller*, the only case cited by the trial court in its conclusions of law, an affidavit was found to be insufficient to show probable cause because of an officer's "mere conclusion that the appellant committed" robbery based on reason and belief. 736 S.W.2d 643, 647 (Tex. Crim. App. 1987). Unlike in *Miller*, here, Detective Goodwin provided a detailed description of how Perez was involved in a shooting, was transported to University Hospital, and was "found in possession of 25.4 grams of a crystal-like substance that was secured in eight separate plastic bags that are known to be used in distribution of narcotics." We conclude that, based on the totality of the circumstances, there was a substantial basis for the magistrate's determination based on the four corners of the affidavit that probable cause existed to believe that Perez had committed drug offenses. *See Baldwin*, 664 S.W.3d at 131–32; *Valadez*, 476 S.W.3d at 667. The trial court erred in concluding otherwise. We sustain the State's third issue.[13]

## IV.    CONCLUSION

We reverse the order of the trial court and remand to the trial court for further

---

[13] Because we agree with the State that the trial court erred in finding that the arrest warrant lacked probable cause, we need not address the State's second issue that Perez's post-arrest statements were otherwise admissible because the statements were sufficiently attenuated from the unlawful arrest. *See* TEX. R. APP. P. 47.1.

proceedings consistent with this memorandum opinion.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
28th day of August, 2024.